**UNITED STATES of America, Appellee,**

v.

**Grover C. BRYANT, Jr., Jack C. Clifton, and Dan Watson, Appellants.**

**No. 9510.**

United States Court of Appeals
Fourth Circuit.

Argued Jan. 6, 1966.

Decided Aug. 3, 1966.

John C. Lindsay, Bennettsville, S. C. (John P. Gardner, Darlington, S. C., on brief) for appellant Grover C. Bryant, Jr.

LeRoy M. Want, Darlington, S. C., for appellant Jack C. Clifton.

George W. Keels, Florence, S. C., for appellant Dan Watson.

Thomas P. Simpson, Asst. U. S. Atty., and Terrell L. Glenn, U. S. Atty., for appellee.

Before HAYNSWORTH and BELL, Circuit Judges, and BUTLER, District Judge.

BUTLER, District Judge:

A jury in the District Court found the appellants Bryant, Clifton, and Watson guilty of conspiracy[1] to violate the In-

1. 18 U.S.C.A. § 371.

ternal Revenue laws relating to liquor. In substance the indictment charged [2] that the appellants in concert with other named codefendants and co-conspirators, conspired to manufacture, distill, possess, transport, remove, deposit and conceal distilled spirits upon which a tax had not been paid. Bryant, the Sheriff of Darlington County, South Carolina, and Clifton, one of his deputies, were alleged to have used their official positions as law enforcement officers to engage in and promote the criminal activities.

This appeal presents the questions whether the District Court erred in denying (1) the motions of the defendants, Bryant and Clifton, for an *in camera* inspection by the court of the grand jury testimony of a government witness, Bobby Ray Lewis, and to make inconsistencies with his trial testimony available to the defendants, and for a new trial for failure to grant such motion, and (2) the motion of the defendant Watson for severance and separate trial on the ground that there was such a material variance between the allegation of a single conspiracy in the indictment and proof of multiple conspiracies as to constitute a violation of the joinder allowable under Rule 8(b), F.R.Crim.P. We find no error in the denial of the motions by the District Court, and therefore we affirm.

 The appeals of Bryant and Clifton raise identical questions. Since a defendant is not entitled as a matter of right to the disclosure of grand jury testimony of a witness who subsequently testifies upon trial, Pittsburgh Plate Glass Company v. United States, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323, rehearing denied, 361 U.S. 855, 80 S.Ct.

42, 4 L.Ed.2d 94 (1959), the question here is whether the trial judge abused his discretion in denying the motion for the *in camera* examination of Lewis' grand jury testimony. It is within the sound discretion of the trial court to make an *in camera* inspection of grand jury testimony where a particular need is shown. Id., 360 U.S. at 399, 79 S.Ct. at 1240; United States v. Johnson, 337 F.2d 180 (4 Cir.1964).

The conspiracy count alleged the existence of the conspiracy from on or about April 27, 1957, to the return of the indictment on April 14, 1964. In presenting its case the government called 50 witnesses, 49 of whom testified prior to Lewis. Their testimony, covering the period of the conspiracy, clearly involves the defendants Bryant and Clifton in the criminal conduct during the period prior to Lewis' involvement. Lewis was not called to testify until the last day of the government's case. His testimony concerned the period from early June 1961 to late December 1961, and related to but a portion of the scope of the conspiracy.[3] Indeed, the evidence is sufficient to establish the existence of the conspiracy and the involvement of the appellants prior to Lewis' testimony.

██ ██ Although "disclosure is wholly proper where the ends of justice require it," United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 234, 60 S.Ct. 811, 849, 84 L.Ed. 1129, the burden remains on the defendant seeking disclosure "to show that a 'particularized need' exists for the minutes which outweighs the policy of secrecy" of grand jury proceedings. Pittsburgh Plate Glass Company v. United States, supra. We are unable to say, in the light of the facts here, that

2. The conspiracy, charged in *Count 1*, named 8 defendants, including appellants, 22 co-conspirators, and alleged 51 overt acts committed in furtherance of the conspiracy. *Counts 2 to 10*, inclusive, charged certain of the defendants with substantive violations of the Internal Revenue laws relating to liquor, and unlawful use of communications media in violation of 47 U.S.C.A. §§ 501 and 502.

None of the appellants were convicted of the substantive counts.

3. Lewis was serving a sentence at the Darlington County jail during the period covered by his testimony. He told of removing whiskey from the jail, at Bryant's direction, to a rural house that was under Bryant's control, and of loading whiskey, while residing at the jail, into the trunk of Bryant's automobile.

the ends of justice required disclosure of the grand jury testimony or that the defendants have shown a particularized need for it. In our view, the government's evidence was sufficient to warrant a conviction without the testimony of Lewis. His testimony dealt with only a small part of the overall plan and it covered but a brief period of the long-continuing offense. "No special impact on [the defendants] is made to appear and there is no showing of a threatened injustice from the denial." United States v. Johnson, 337 F.2d 180, 197 (4 Cir.1964). No abuse of discretion having been shown, it was not error to deny the motions for an inspection of the grand jury testimony.

It follows from what we have said that the motions of defendants Bryant and Clifton for a new trial, resting substantially upon the alleged abuse of the court's discretion, must fail. Wiley v. United States, 277 F.2d 820 (4 Cir. 1960).

Watson's appeal presents the question whether the trial judge erred in denying his motion for a severance and separate trial. In addition to the asserted material variance between the allegation of a single conspiracy in the indictment and proof of multiple conspiracies, he contends that three substantive counts, in which he is not named as a defendant, were not set forth as overt acts in the conspiracy count and should have been severed. We cannot agree with either contention.

This case is similar to the case of Williams v. United States, 218 F.2d 276 (4 Cir.1954), which also arose in the Eastern District of South Carolina and involved a conspiracy among police officers and others to violate the Internal Revenue laws relating to liquor. One of the contentions on appeal was that the proof showed a series of separate conspiracies rather than a general conspiracy as charged. We said:

"This evidence, which was quite voluminous and given by many witnesses, may be likened to the web of the spider. No single strand, or even several strands, would be sufficient. Yet when all these strands are considered together, and their interrelations and connections are considered, they form, we think, a complete web, which was more than sufficient to take to the jury the question of a general conspiracy among the appellants. On all this evidence, the jury might well have found (as we think they did find) that all those acts just could not have happened save on the theory of a consistent pattern of agreement between these appellants." 218 F.2d at 278.

Again, we said in United States v. Wenzel, 311 F.2d 164, 167:

"* * * It is fundamental that it is not necessary that every act undertaken in carrying out the object of a conspiracy should be participated in by every member of the conspiring group. In carrying out the purpose of a conspiracy it will be found that in practically every case different groups played different parts. To unite them in a single conspiracy it is only necessary that the activities of each individual or group be directed toward accomplishing a single criminal objective."

The "single criminal objective" here was the manufacture, procurement and distribution of the nontaxpaid liquor, with the attendant criminal activities which these goals required. In essence the evidence disclosed that Bryant, Clifton and other law enforcement officers, and those acting in concert with them, conspired to violate the Internal Revenue laws relating to liquor. The scope of the conspiracy is clearly stated by the appellee:

"It was the plan and purpose of the conspirators that they would execute the conspiracy by those of them who were law enforcement officials, using their official positions to engage in the manufacture, removal, concealment, transportation, possession, sale and distribution of non-taxpaid whiskey; to offer protection from detection and prosecution; to solicit persons caught

engaged in illegal manufacture and distribution of nontaxpaid whiskey to work at stills owned by the conspirators; to convert nontaxpaid whiskey found at stills to their own use for sale and distribution; to furnish confiscated distilling equipment to violators acting in concert with them; to accept bribes to allow violators of the liquor laws to continue to operate; to act as look-outs and afford protection from other State and Federal law enforcement officals; to furnish distilling equipment and raw materials for use in the manufacture of nontaxpaid whiskey; to use inmates of the Darlington County Chain Gang and Jail in the operation of illicit distilleries and in the removal, concealment and distribution of nontaxpaid whiskey and to cause the arrest of persons and force them to work at illicit distilleries and later release them without placing formal charges." [4]

There was evidence to the effect that Bryant lived in the jailer's quarters at the county jail for about a year during the period covered by the conspiracy. Bryant leased a farm which he and Clifton visited on several occasions. An unregistered distillery was subsequently discovered on the leased premises by an employee of Bryant, and it was moved by Bryant and Clifton to Bryant's farm. Bryant and Clifton seized between 40 and 50 cases of nontaxpaid whiskey in a raid and stored it in a log cabin rather than the usual storage place at the jail. Bryant arranged for the leasing of a store by a codefendant and paid the rent for two months. During the first five months of the tenancy, the codefendant purchased 203,605 pounds of sugar and 2,636 cases of half-gallon fruit jars. Clifton paid three co-conspirators to set up a distillery, and Bryant furnished money to purchase still parts and materials for use in manufacturing nontaxpaid whiskey. Clifton on occasions served as "lookout" during the manufacture and transportation of whiskey, and received a portion of the profits from the sale. Bryant demanded and received money from operations of illicit distilleries for protection by the law enforcement officers. Bryant and Clifton arranged for violators to operate stills on a profit sharing basis. Bryant and Clifton used inmates of the county jail in the operation of distilleries and used them in loading a copper still and nontaxpaid whiskey from the storage place at the jail into a truck and automobile owned by Bryant which were transported to Bryant's farm. Bryant transported in his official car bales of sugar and cases of fruit jars to the home of a co-conspirator.

It is clear from the evidence that Bryant, Clifton, and other law enforcement officers were the central figures in the conspiracy. It is also clear that Watson and numerous others acted in concert with them in carrying out the plan and purpose of the criminal activity. There was evidence that Watson, while operating a distillery for others, was told by Bryant to be out by nine o'clock the next morning as the still would be blown up. The jars at the still were returned by Watson to the store leased by a codefendant for whom Bryant had paid two months' rent. Later, Watson transported an inmate to and from the county jail to assist in operating a distillery, at which time approximately 100 cases of nontaxpaid whiskey were produced. Bryant and Watson visited the home of a violator and Bryant informed him he would have to take Watson in as a partner or get out of the business.

Although Watson served primarily as a still operator, there was substantial evidence that he had knowledge of the unlawful purpose sought to be accomplished and that he intended to act with others in the accomplishment of that purpose. He knew of the participation of the law enforcement officers in the manufacture of illegal whiskey, in the use of jail inmates for such purpose, and

4. Appellee's Brief, pp. 33, 34.

in the protection of violators who co-operate with them.

■ It is not necessary that all of the persons taking part in a conspiracy should play parts of equal importance or activity. It is sufficient to convict a defendant of the crime of conspiracy if he knows in a general way of the purpose of other persons to violate the law and then assists in any way to accomplish this purpose no matter how great or small his activities may be. United States v. Wenzel, 311 F.2d 164 (4 Cir.1962).

■■ It is immaterial that certain liquor law violators whose interests were adverse to the original conspirators joined the conspiracy after its formation, nor that all the conspirators were not present or participated in every act undertaken in carrying out the object of the conspiracy. "The addition of new members to a conspiracy or the withdrawal of old ones from it does not change the status of the other conspirators." Poliafico v. United States, 237 F.2d 97, 104 (6 Cir.1956). The unlawful purpose of the conspiracy and the principal actors remained unchanged. There were many others, including Watson, who played minor parts in which some, but not all, of the conspirators participated, but these were all integral parts of a general, unified conspiracy to accomplish a single criminal objective. The contention of Watson that the evidence established numerous separate and unrelated conspiracies, rather than a single conspiracy as alleged in the indictment, is without merit.

■ Watson's additional contention that he was entitled to severance of the substantive counts is likewise without merit. It is not required that all defendants be charged in each count. Rule 8(b), F.R.Crim.P., Schaffer v. United States, 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960). Where codefendants are charged with separate substantive offenses, the substantive counts are not misjoined where the conspiracy count,

the connecting link of the substantive counts, is proved. United States v. Godel, 361 F.2d 21, (4 Cir.1966); United States v. Wright, 309 F.2d 735 (7 Cir. 1962).

Affirmed.