Jesse Earl **MILLER**, Appellant,

v.

**UNITED STATES** of America, Appellee.

Robert **HOLLAND**, Appellant,

v.

**UNITED STATES** of America, Appellee.

Nos. 19230, 19271.

United States Court of Appeals Eighth Circuit.

May 14, 1969.

Daniel P. Reardon, Jr., St. Louis, Mo., for appellants.

Bruce C. Houdek, Special Asst. U. S. Atty., Kansas City, Mo., for appellee; Calvin K. Hamilton, U. S. Atty., Kansas City, Mo., was with him on the brief.

Before MATTHES, MEHAFFY and LAY, Circuit Judges.

MATTHES, Circuit Judge.

Appellants are two of twenty defendants who were jointly charged with committing numerous burglaries of United States post offices and other offenses related to the burglaries by indictment filed on March 31, 1967, in the United States District Court, Western District of Missouri. The 37 count indictment alleged that post offices had been burglarized between October 30, 1964, and March 31, 1967, in Missouri, Illinois, Iowa, Indiana, Minnesota, Oklahoma, Kansas, Wisconsin, Arkansas and Tennessee.[1]

Count I alleged that all of the defendants, including appellants, and eight co-conspirators not named as defendants entered into a conspiracy which began in October, 1964, in violation of 18 U.S.C. § 371, to commit offenses in violation of 18 U.S.C. § 641, 18 U.S.C. § 2115 and 18 U.S.C. § 1361. Count I alleged and set forth in detail 153 overt acts which had

1. Eleven of the defendants pled guilty and some of them appeared as witnesses for the Government in the trial of appellants. Four of the defendants, in addition to appellants, were tried by juries and convicted. The charges were dismissed against two others. The record does not disclose the disposition of the charges against defendant Leland Miller but it does indicate that he was confined in the federal penitentiary at Leavenworth, Kansas, and was brought into court under proper writ to testify in the trial of defendant Bradley. Neither of the appellants testified in his own behalf and offered scant evidence in defense.

been committed in furtherance of the conspiracy and for the purpose of effecting the unlawful objects thereof. The remaining 36 counts alleged substantive offenses.

In addition to being charged as a conspirator, appellant Miller allegedly committed four of the substantive offenses: Count VI—burglarizing the post office at Camdenton, Mo., on February 16, 1965; Count VII—wilfully damaging government property in that post office; Count XV—burglarizing the Maryville, Mo., Post Office on May 10, 1965; Count XVI—wilfully damaging government property in that post office. The appellants were jointly tried and found guilty as charged. Holland was sentenced to four years imprisonment. Miller received five-year prison terms on each of Counts I and VI, to be served concurrently and five years on each of Counts XV and XVI, to be served concurrently with each other and concurrently with the sentences imposed on Counts I and VI, and ten years on Count VII to be served consecutively to the other sentences, for a total of 15 years. Following denials of motions for a new trial, these appeals were perfected. They were consolidated in this court.

Appellant Miller made no effort in the trial to disprove the illegal acts encompassed in the four substantive counts. Neither does he contend here that he is not guilty of those offenses. Nor do the appellants take issue with the sufficiency of the Government's evidence to warrant submission of the conspiracy count. What the appellants complain of is the course pursued in trying them. They contend in major part that they were prejudiced and did not receive a fair trial because of the failure of the court to sever them and accord them separate trials. Miller also asserts that the court should have severed the counts. These and other alleged trial errors will be considered more exhaustively below.

Inasmuch as there is no direct challenge to the sufficiency of the proof, we engage in only a brief résumé of the evidence which is uncontradicted aside from an abortive attempt to impeach and thus discredit the defendants who testified for the Government. The conspiracy was spawned by defendants Richard Christenson and William Conway. In a relatively short period of time it developed into a full-grown scheme which manifested itself in widespread operations having one common aim. Post offices were unlawfully entered and postage and savings stamps were purloined and disposed of by sale to three of the defendants. In the early stage of the scheme defendants Paustian and Taylor of Manhattan, Kansas, acted as fences and purchased the stolen property from the burglars. Later, Paustian and Taylor arranged for Junior Bradley to succeed them as the principal fence. Various defendants played definite parts and were participants for different periods of time. Christenson testified that he had burglarized 35 post offices; Conway stated that he had been involved in at least 28 burglaries, including 18 with Christenson, in nine or ten states.

The evidence convincingly demonstrates that Miller joined the conspiracy in February, 1965, and knowingly aided the furtherance of it by participating in eight post office break-ins. Apparently Holland became a member in July, 1965, and was involved in two burglaries. The burglaries and the disposition of the stolen property followed a distinct pattern and formed a solid basis for the trial, submission and finding of a single conspiracy.

## SEVERANCE ISSUE

Rule 8(a), Fed.R.Crim.P., specifically provides that two or more offenses may be charged in the same indictment if they are of similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan. Under Rule 8(b) two or more defendants may be charged in the same indictment if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions consti-

tuting an offense or offenses. As this court, Judge Lay, stated in Haggard v. United States, 369 F.2d 968, 973, cert. denied, Alley v. United States, 386 U.S. 1023, 87 S.Ct. 1379, 18 L.Ed.2d 461 (1966), "Broad interpretation of Rule 8(b) is undoubtedly encouraged in the interests of more efficient administration of criminal trials. This in no way detracts from the rights of individuals to avoid prejudicial joinder." If it appears that a defendant is prejudiced by a joinder of offenses or of defendants in an indictment or by joinder for trial together, Rule 14 authorizes the court to order separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires. The trial court's refusal to order separate trials or grant severance, however, may be overturned only for an abuse of discretion. Wangrow v. United States, 399 F.2d 106, 110 (8th Cir.), cert. denied 393 U.S. 933, 89 S.Ct. 292, 21 L.Ed.2d 270 (1968); Hanger v. United States, 398 F.2d 91, 99 (8th Cir.1968); White v. United States, 395 F.2d 170, 175, 176 (8th Cir.), cert. denied, sub. nom., Kubik v. United States, 393 U.S. 844, 89 S.Ct. 127, 21 L.Ed.2d 115 (1968); Terlikowski v. United States, 379 F.2d 501, 506 (8th Cir.), cert. denied, 389 U.S. 1008, 88 S.Ct. 569, 19 L.Ed.2d 604 (1967); Butler v. United States, 317 F.2d 249, 264, 6 A.L.R.3d 582 (8th Cir.), cert. denied, sub. nom., Benedec v. United States, 375 U.S. 836, 84 S.Ct. 67, 11 L.Ed.2d 65 (1963).

On April 13, 1967, Miller moved the district court, pursuant to Rule 14, Fed. R.Crim.P., to sever him from the other defendants and grant him a separate trial. He also moved the court to grant him three separate trials: one on Count I, another on Counts VI and VII, another on Counts XV and XVI. Judge Hunter, before whom Miller's case was then pending, granted his motion to sever him from the other defendants but denied his request to sever the counts for the reason that there was no present showing of prejudice. Initially, Miller was tried alone and was found guilty by a jury on all five counts. Judge Hunter, however, on June 29, 1967, granted Miller's motion for a new trial for failure to adequately instruct the jury as to the evidence it was free to consider on each of the five counts, and because of possible error in the conspiracy instruction. In the same order Judge Hunter found no error from joinder of the five counts and the single trial. By a contemporaneous order Judge Hunter disqualified himself from hearing the case on retrial because he had read portions of the presentence investigation made after Miller had been found guilty. He thereupon transferred the case to Judge Collinson. On September 21, 1967, Judge Hunter transferred Holland's case to Judge Collinson because of common questions of consolidation, severance and discovery relative to appellant Miller's portion of the case pending before Judge Collinson.

After his case had been transferred, Miller again moved for severance of the counts. In denying the motion Judge Collinson concluded:

"[T]he case has been tried once without a severance and the preceding trial judge specifically found that the joinder was not prejudicial after hearing all the counts tried together. All of the cases hold that the trial court shall grant a severance at any stage of a trial if prejudice does appear. The experienced trial judge who tried this case before did not find this prejudicial and this is very persuasive upon this Court."

Although Miller made no written motion for severance from his co-defendant, his counsel, who also represented Holland, orally moved for severance of the two defendants at the commencement of the trial, and again requested severance of the counts against Miller. Judge Collinson denied the motions, stating:

"Now, the two * * * motions for severance will be denied at this time subject to being renewed under the [applicable] rules and cases * * * during the course of trial, if the

Court thinks there is something preju-dicial in the joinder of either of the defendants or of the counts."

At no time thereafter were the motions renewed.

Appellants' basic position is that the evidence shows as a matter of law the existence of separate conspiracies. They assert that "[t]he record indicates that there were in fact two separate and dis-tinct conspiracies proved. One regard-ing the Camdenton, Missouri Post Office and the other regarding the alleged breakins and entries of post offices thereafter." From this premise they argue that the Camdenton count was di-vorced from the others and should have been severed. Interwoven in the argu-ment presented is the failure to sever the conspiracy count from the substan-tive counts. We disagree.

Contrary to appellants' contention this case does not fall within the teachings of Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946) and United States v. Goss, 329 F.2d 180 (4th Cir.1964). The *Kotteakos* Court dealt with disconnected conspiracies hav-ing no common object. This record con-vincingly rebuts any basis for applying the *Kotteakos* rule to this case. The *Goss* Court decided the Government had failed to prove one indispensable ingre-dient of a conspiracy—that the accused persons have a common aim. Here, the record cogently demonstrates the pres-ence of that vital element. As shown above, the proscribed activities encom-passed large scale and widespread opera-tions. The defendants, Paustian, Taylor and Bradley, provided a market for the stamps and other loot. Others, includ-ing Miller, did the burglarizing and were the source of the purloined proper-ty.

The issue here was considered at length in Isaacs v. United States, 301 F.2d 706 (8th Cir.), cert. denied, 371 U. S. 818, 83 S.Ct. 32, 9 L.Ed.2d 58 (1962). We recognized the firmly entrenched principle that a fraudulent scheme and conspiracy may be and usually is estab-lished by circumstantial evidence, id. 301 F.2d at 724, and on the authority of Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, reiterat-ed that "participation in a criminal con-spiracy need not be proved by direct evi-dence; a common purpose and plan may be inferred from a 'development and a collocation of circumstances'." We fur-ther stated that where the evidence af-fords satisfactory proof that a conspira-cy has been formed, "but slight evidence connecting a defendant therewith may still be substantial, and if so, sufficient." 301 F.2d at 725. See also Cave v. United States, 390 F.2d 58, 69 (8th Cir.), cert. denied, 392 U.S. 906, 88 S. Ct. 2059, 20 L.Ed.2d 1365 (1968).

This court has also recognized that a conspiracy is not necessarily born full grown and often expands by successive stages. See Nassif v. United States, 370 F.2d 147, 152 (8th Cir.1966).

■ It has long been the law that a conspiracy count may properly be joined with substantive counts where it is al-leged and shown that the offenses are of the same or similar character and are based upon two or more acts or transac-tions connected together or constituting parts of a common scheme or plan. Schaffer v. United States, 362 U.S. 511, 514, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960); Baker v. United States, 393 F.2d 604, 607 (9th Cir.), cert. denied, 393 U.S. 836, 89 S.Ct. 110, 21 L.Ed.2d 106 (1968); United States v. Hensley, 374 F.2d 341, 352 (6th Cir.), cert. denied, 388 U.S. 923, 87 S.Ct. 2139, 18 L.Ed.2d 1373, rehearing denied, 389 U.S. 891, 88 S.Ct. 25, 19 L.Ed.2d 210 (1967); United States v. Bryant, 364 F.2d 598, 603 (4th Cir.1966); Pegram v. United States, 361 F.2d 820, 821 (8th Cir.1966).

■ By way of summary, it is abun-dantly clear that (1) a single conspiracy was formed with one common aim, and (2) the appellants knowingly became ac-tive participants in attaining the objects of the scheme. Consequently, we hold that appellants were not prejudiced in the slightest by failure to sever the

counts or the appellants. Two able and experienced trial judges found that this was a proper case for joinder of defendants and counts. Our analysis of the evidence leads us to conclude that this is a typical Rule 8(a) and (b) situation. The result contended for—a separate trial for Holland and three separate trials for Miller—would do violence to the letter and spirit of the law and run contrary to our conception of orderly and efficient administration of justice.[2]

## EVIDENTIARY MATTERS

Two procedural events are the subject of complaint. Judge Collinson denied a motion for mistrial after defendant Christenson, a government witness, voluntarily stated that during the course of his initial meeting with appellant Miller in a St. Louis tavern the bartender mentioned that Miller was a "burglar."[3]

Later, in response to an inquiry relating to disposition of some stolen stamps obtained in a burglary of the Menahga, Minnesota, Post Office by Christenson, Miller and Holland, Christenson stated: "[I]t [a few hundred dollars worth of stamps] was not worth nothing to speak of and we don't want to be driving around the country with three or four hundred dollars worth of stamps. If we got stopped with them, we got police records and * * *." Counsel for Miller and Holland made no immediate specific objection, did not request a mistrial, but

asked that the jury be instructed to "disregard the last portion of this witness' testimony * * *." The court responded and granted the very relief requested, that is, it instructed the jury to disregard the testimony. Later, after the completion of Christenson's testimony, and a short recess, counsel did make a specific request for a mistrial on the basis of Christenson's latter comment about police records.

We are not inclined to hold that the court should have declared a mistrial. Beyond any doubt the statements were not invited or solicited by the prosecutor. They were uttered voluntarily and spontaneously. They did not, when viewed in context, and in light of other evidence showing that Christenson was a thief and that appellants had engaged in a series of burglaries, have any prejudicial effect. The court was quick to take action and granted all the relief able counsel requested except to deny the motion for a mistrial. The error, if any, was clearly harmless within the meaning of Rule 52(a), Fed.R.Crim.P. See United State v. Francisco, 410 F.2d 1283 (8th Cir. May, 1969); Wright v. United States, 389 F.2d 996, 999–1000 (8th Cir. 1968); Leonard v. United States, 386 F.2d 423, 425 (5th Cir.1967); United States v. Phillips, 375 F.2d 75, 81 (7th Cir.), cert. denied, 389 U.S. 834, 88 S.Ct. 40, 19 L.Ed.2d 95 (1967); Atkinson v. United States, 344 F.2d 97, 100–101 (8th Cir.), cert. denied, 382 U.S. 867, 86 S.Ct.

2. We regard it significant that appellant Miller was tried alone and found guilty on all counts in his first trial. The second jury, under cautious supervision and proper instructions not questioned here, reached the same result. On the basis of the strong evidence against appellants separate trials would in our judgment leave appellants where they now find themselves—guilty as charged.

Additionally, we find it meaningful that the court was careful to give limiting instructions to the jury surrounding the joinder of offenses and defendants. The court instructed that each defendant was charged with separate and distinct offenses and that the jury should make separate findings as to each defendant and each charge. The court also direct-

ed that a finding as to one defendant or offense should not influence the verdict as to any other defendant or offense. See Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969).

3. On direct examination Christenson was asked what motivated him to participate in the Camdenton, Missouri, burglary with Miller. His response was:

"I met Miller in St. Louis in a tavern through a bartender that we both knew. I didn't know him at the time, the bartender introduced me to him, but he knew I was a thief and he told me that Miller was a burglar."

The court did, however, direct the statement stricken.

141, 15 L.Ed.2d 106 (1965). See also Kotteakos v. United States, *supra*, 328 U.S. at 763, 66 S.Ct. 1239.

■ The other point of an evidentiary nature relates to the action of the court in allowing the jury to examine exhibits containing Miller's signature. The Government introduced into evidence a stipulated signature of Miller. Next, it introduced U.S. Post Office savings stamp books bearing the name of "J. Miller" and "J. Mills" and Miller's alleged address. Appellant claims that the stamp books bearing the signature of "J. Miller" and "J. Mills" were never connected to appellant Miller and that allowing the jury to compare the stipulated signature to the ones on the savings stamp books would amount to qualifying the jury as handwriting experts. Appellants also contend that it was error to admit into evidence a certified copy of Miller's automobile license since it was immaterial and irrelevant to the charges pending before the jury and was never connected to any other testimony in the trial. We find the contentions wholly without merit. Our examination of the record reveals ample evidence connecting the disputed exhibits with appellant Miller. Furthermore, 28 U.S.C. § 1731 specifically provides that the admitted handwriting of any person is admissible as evidence for purposes of comparison to determine the genuineness of other handwriting attributed to such person.

### PROSECUTOR'S ARGUMENT

■ Finally, appellants complain of the following statement of the prosecutor in his argument: "Now, this trial has gone on for three days' worth of evidence which you have heard, and the evidence that the United States has brought to you is uncontradicted. There is no contradiction in the evidence." Appellants' attorney immediately asked for a mistrial on the grounds that the statement was an improper comment on the failure of either of the appellants to take the witness stand. The court refused the request for a mistrial,

promptly and properly instructed the jury to disregard the prosecutor's remark and later in his final instruction directed the jury to draw no inference of any kind from the failure of appellants to testify.

Considering the strong and overwhelming evidence of guilt, and the corrective action of the court, we are not convinced that the prosecutor's comment affected the substantial rights of appellants. Rule 52(a), *supra*. The case is readily distinguishable from Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), strongly relied upon by appellants. What happened here is more analogous to remarks which came under attack and were held nonprejudicial in United States v. Edwards, 366 F.2d 853, 871 (2d Cir.1966), cert. denied, sub. nom., Jakob v. United States, 386 U.S. 908, 87 S.Ct. 852, 17 L.Ed.2d 782, and Parness v. United States, 386 U.S. 919, 87 S.Ct. 882, 17 L.Ed.2d 790 (1967); Sterling v. United States, 333 F.2d 443, 447–450 (9th Cir. 1964); United States v. Wright, 309 F.2d 735, 738–739 (7th Cir.1962), cert. denied, 372 U.S. 929, 83 S.Ct. 873, 9 L.Ed.2d 733 (1963); Homan v. United States, 279 F.2d 767 (8th Cir.), cert. denied, 364 U.S. 866, 81 S.Ct. 110, 5 L.Ed.2d 88 (1960). Here, in accordance with the course pursued in *Edwards, Sterling* and *Wright, supra,* Judge Collinson instructed the jury that a defendant cannot be compelled to take the witness stand and that the jurors should not permit the failure to testify to influence them in arriving at a verdict.

We conclude by paraphrasing the final paragraph of Judge Johnsen's scholarly opinion in Homan v. United States, 279 F.2d at 776. We are convinced from our evaluation of the entire record that appellants have had a fair trial, that no error was committed which individually or collectively can be regarded as prejudicial in the circumstances. A reversal could not in any way promote or serve the ends of justice.

The judgments of conviction are affirmed.