**UNITED STATES of America,
Appellee,**

v.

**David A. McGOWAN, Appellant.**

**UNITED STATES of America,
Appellee,**

v.

**Richard A. McCALEB, Appellant.**

**Nos. 13241, 13279.**

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 4, 1969.

Decided March 16, 1970.

414

Plato Cacheris, Alexandria, Va., for appellant in No. 13,241.

Thomas R. Dyson, Jr., Washington, D. C., for appellant in No. 13,279.

Jill W. Volner, Atty., Department of Justice (Will Wilson, Asst. Atty. Gen., and Edward T. Joyce, Atty., Department of Justice, on the brief), for appellee.

Before BRYAN and BUTZNER, Circuit Judges, and WIDENER, District Judge.

ALBERT V. BRYAN, Circuit Judge:

A conspiracy and four related substantive instances of illicit interstate gambling were charged to both David A. McGowan and Richard McCaleb in five counts of a single indictment. Convicted upon all counts, McCaleb received consecutive sentences of imprisonment on every count. McGowan received consecutive sentences except on one count for which the sentence was made concurrent.[1] On their appeals we affirm subject to further inquiry upon the refusal of the trial court to allow the appellants access to the grand jury minutes.

In the procedural and evidence points now made by them against the judgments we see no substance, but look seriatim to the more serious assignments: the appellants were put in double jeopardy in the proof of the indictment and the substantive offenses; the evidence was insufficient to convict on several of the counts; and the appellants were prejudiced by the denial of an opportunity to examine the grand jury testimony.

## I. THE INDICTMENT PROOF

The conspiracy count, numbered 1 and drawn under 18 U.S.C. § 371, charges an agreement by the appellants during the period of September 15, 1967 to January 1, 1968 to break the law by using wire communication facilities for transmission of bets between Virginia and Washington, D. C., 18 U.S.C. § 1084.[2] The conspiracy was also alleged to embrace traveling or causing travel between the two areas with intent to carry on locally prohibited activities, punishable under 18 U.S.C. § 1952.[3] Further, the defendants were charged under this count with an agreement to transport gambling paraphernalia in interstate commerce, prohibited by 18 U.S.C. § 1953.[4]

---

1. A third defendant, Eugene J. Corsi, was indicted in counts 1, 2 and 3 only, but was not tried at the same time.

2. § 1084. *Transmission of wagering information; penalties.*

   (a) Whoever being engaged in the business of betting or wagering knowingly uses a wire communication facility for the transmission in interstate or foreign commerce of bets or wagers or information assisting in the placing of bets or wagers on any sporting event or contest, or for the transmission of a wire communication which entitles the recipient to receive money or credit as a result of bets or wagers, or for information assisting in the placing of bets or wagers, shall be fined not more than $10,000 or imprisoned not more than two years, or both.

3. § 1952. *Interstate and foreign travel or transportation in aid of racketeering enterprises.*

   (a) Whoever travels in interstate * * * commerce or uses any facility in interstate * * * commerce, including the mail, with intent to—

   (1) distribute the proceeds of any unlawful activity; or

   *     *     *     *     *

   (3) * * * promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

4. § 1953. *Interstate transportation of wagering paraphernalia.*

   (a) Whoever, except a common carrier in the usual course of its business, knowingly carries or sends in interstate or foreign commerce any record, paraphernalia, ticket, certificate, bills, slip, token, paper, writing, or other device used, or to be used, or adapted, devised, or designed for use in (a) bookmaking; or (b) wagering pools with respect to a sporting event; or (c) in a numbers, policy, bolita, or similar game shall be fined not more than $10,000 or imprisoned for not more than five years or both.

Counts 2, 3, 4 and 5 are couched in the proscriptive words of section 1952, and describe joint offenses of the two appellants which were of the same character with, and committed during the continuance of, the conspiracy. Citation of 18 U.S.C. § 2(a) after each of these counts implies an accusation of collusion between the two as aiders and abettors.[5]

The prosecution is invalid, argue the appellants, because it pluralizes into five the single crime of conspiracy alleged in count 1. They say that pursuant to this form of criminal pleading evidence identical to that adduced to establish the conspiracy was used to convict on the four substantive counts. The result, they insist, was to put the defendants in multiple jeopardy, as squarely demonstrated by *consecutive* punishments on the five counts.

■ Refutation of this argument begins with Pereira v. United States, 347 U.S. 1, 11, 74 S.Ct. 358, 364, 98 L.Ed. 435 (1954) where the Chief Justice said:

"The petitioners allege that their conviction on both the substantive counts and a conspiracy to commit the crimes charged in the substantive counts constitutes double jeopardy. It is settled law in this country that the commission of a substantive offense and a conspiracy to commit it are separate and distinct crimes, and a plea of double jeopardy is no defense to a conviction for both. See Pinkerton v. United States, 328 U.S. 640, 643–644, 66 S.Ct. 1180, 1181–1182, 90 L.Ed. 1489, and cases cited therein. Only if the substantive offense and the conspiracy are identical does a conviction for both constitute double jeopardy. Cf. Gavieres v. United States, 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489."

■ The pertinence of this exposition seems acknowledged by the appellants. However, we hold, further, that for conviction of a substantive count the use of evidence employed to prove the conspir-

acy is altogether permissible. Indeed, the propriety, if not the necessity, of tracing the substantive offenses to the conspiratorial conduct has been authoritatively recognized. In Nye & Nissen v. United States, 336 U.S. 613, 618–619, 69 S.Ct. 766, 769–770, 93 L.Ed. 919 (1949) the Court stated:

"The principal question in the case pertains to the charge concerning the substantive offenses and the sufficiency of the evidence to support them.

"In Pinkerton v. United States, [328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489], a conspiracy and substantive offenses were charged. We held that a conspirator could be held guilty of the substantive offense * * * provided that the substantive offense was committed in furtherance of the conspiracy and as a part of it. A verdict on that *theory* requires submission of those fact issues to the jury. * * * *"

\* \* \* \* \* \*

"*The fact that some of that evidence may have served double duty by also supporting the charge of conspiracy is of course immaterial.*" (Accents added.)

Appellants' reliance upon Sealfon v. United States, 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180 (1948) cannot succeed. There the conspiracy and substantive indictments were both dependent for conviction upon the same indispensable fact. The Court noted that in the first or conspiracy case, the trier of the facts had found that this essential did not actually exist. This finding was held to be res judicata sustaining the accused's later denial of that fact, so the second prosecution could not prevail.

This decision, as the Court itself noted, was upon the "particular facts" there involved. Sealfon, supra, 332 U.S. at 576, 68 S.Ct. 237. At all events, it is not persuasive here, because while the proof under the conspiracy count was admissible in proving the substantive

5. § 2. *Principals.*
   (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

counts, no fact indispensable to the two sets of counts was found nonexistent in the conspiracy count but found existent in the other charges. See Adams v. United States, 287 F.2d 701, 704 (5 Cir. 1961); Cf. Ross v. United States, 197 F.2d 660, 662 (6 Cir. 1952).

## II. THE EVIDENCE

■ The record is topfull of proof warranting the conspiracy conviction. It clearly depicts the confederation and the accompanying alleged overt activities. A summarized narrative of the proof follows: McCaleb and McGowan shared an apartment in Alexandria, Virginia where gaming materials and gambling paraphernalia were observed; the two men were often seen together in Washington, D. C., at places where McGowan distributed football pool cards and McCaleb received wager moneys; McCaleb and McGowan in collusion both discussed with a Government undercover agent, at separate times, gambling debts owed to them and a complotter; McGowan gave McCaleb's telephone number to this agent for the purpose of laying bets; McGowan traveled from the District of Columbia to their Alexandria apartment transporting football wager cards; and McCaleb remarked to Jean Bates, his friend and a Government witness, that he was a professional gambler and that McGowan was his "collector" in the contrivance. This statement was not allowed as proof until the conspiracy had been prima facie established.

Subject to his assertions of double jeopardy as heretofore discussed, McGowan does not contest the things charged to him in substantive counts 4 and 5 but denies the conspiracy and the allegations of counts 2 and 3. As to the latter, McGowan contends that he was not even present at the times and places set forth in these charges. With the same prefatory conditions, McCaleb concedes the conspiracy and does not challenge the sufficiency of the evidence under counts 2 and 3. He denies the commission of the acts imputed to him in counts 4 and 5.

■ As to each of the four substantive counts, the evidence unquestionably showed breaches of the indictment statutes by one or the other of the appellants, aside from the crime of conspiracy. The record teems, too, with evidence of mutual aid and abetment in these activities. Although to establish such complicity, direct evidence of unlawful acts is not required, nevertheless apparently innocent behavior may in circumstances prove criminal participation. The jury in this case evidently found it did. This same evidence, without offending the commandment against double jeopardy, was used or usable under the conspiracy accusation. Nye & Nissen v. United States, supra, 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949). There it proved an *agreement* in crime; here it proves *acts* in crime.

■ It must be remembered, too, that when a conspiracy has been found, as here, the act of one conspirator becomes the act of the other, whether present or absent, if performed in furtherance of the combination. Pinkerton v. United States, supra, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). Consequently, the separate wrongdoing of McGowan and McCaleb under the substantive counts is imputable to the other under the conspiratorial principle. With this consideration and with the proof of their accessory outlawry, McCaleb and McGowan are again readily seen to be guilty under the substantive counts as well as of the conspiracy.

The case was tried on these two theories. The submission to the jury accurately and precisely defined a criminal conspiracy and the requisite proof. The judge soundly explained the essential constituents of each of the substantive crimes, and sufficiently set forth, too, the law of aiding and abetting. The verdict was well within the evidence and the critical legal propositions.

## III. THE GRAND JURY MINUTES

The appellants' final assault upon the convictions is the refusal of the trial

court to permit them to see the minutes of the grand jury. The request was advanced generally before trial and refused. It was renewed during trial but directed specifically to the testimony of Jean Bates and Richard Pozecki, leading Government witnesses. Before the Court she testified to confusion and unclear memory in respect to her answers during interviews with Government investigating agents and when before the grand jury. Pozecki had intermingled with the accused as a spy for the Government. As a witness he found it necessary to refer from time to time to notations made during his espionage. When declining the requests at trial, the District Judge inspected the minutes in camera, and announced he found no conflict between the grand jury and the in-court evidence of these witnesses. The minutes, sealed, have been sent by the judge to this court for review of his conclusion, if desired.

■ In our judgment the District Court should have opened those parts of the minutes to the defendants. This is the tutelage of Dennis v. United States, 384 U.S. 855, 869–870, 86 S.Ct. 1840, 1849, 16 L.Ed.2d 973 (1966):

"In general, however, the Court has confirmed the trial court's power under Rule 6(e) of the Federal Rules of Criminal Procedure to direct disclosure of grand jury testimony 'preliminarily to or in connection with a judicial proceeding.' In United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 234, 60 S.Ct. 811, 849, 84 L.Ed. 1129, the Court acknowledged that 'after the grand jury's functions are ended, disclosure is wholly proper where the ends of justice require it.' In *Proctor & Gamble, supra,* 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077, the Court stated that 'problems concerning the use of the grand jury transcript at the trial to impeach a witness, to refresh his recollection, to test his credibility * * *' are 'cases of particularized need where the secrecy of the proceedings is lifted discretely and limitedly.' 356 U.S., at 683, 78 S.Ct.,

at 987 * * * In a variety of circumstances, the lower federal courts, too, have made grand jury testimony available to defendants."

The "particularized need" mentioned by the Court there as the touchstone of determination is avowed here by the circumstances per se.

Further, since these two witnesses, Jean Bates and Richard Pozecki, had at trial already divulged their knowledge and identity with the case, public policy no longer dictated the secrecy prescribed by Rule 6(e), Federal Rules of Criminal Procedure.

Our conclusion does not detract from what was said in United States v. Chase, 372 F.2d 453, 466 (4 Cir. 1967), where we refused the defendants' request to peer at the grand jury evidence. Its facts were nowhere near so compelling as the need manifest here. Likewise, because of the force of the present demand, no dissertation is appropriate upon the expansion of the production grace hinted at in *Dennis,* 384 U.S. at 870, 86 S.Ct. 1840, or the leniency of exploration encouraged in United States v. Hughes, 413 F.2d 1244, 1249–1250 (5 Cir. 1969). Cf. White v. United States, 415 F.2d 292 (5 Cir. 1969).

■ Where as here production is deemed appropriate, the mechanics of the process calls for defense counsel to determine what is useful. The trial judge functions only in a supervisory capacity. For example, he is "to cause the elimination of extraneous matters and to rule upon applications by the Government for protective orders in unusual situations * * *" *Dennis, supra,* 384 U.S. at 875, 86 S.Ct. 1840, at 1852. This procedure is favored, semble, in somewhat kindred environs in Alderman v. United States, 394 U.S. 165, 181–184, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). Of course, the search is only to ascertain whether the witness's earlier testimony is inconsistent with the witness's trial affirmations. The truth of the witness's previous evidence is not at stake; any variance is usable only to shake the later testimony.

After defense counsel have looked at the minutes of the testimony of Bates and Pozecki, the District Court will, according to its judgment, set aside or reaffirm the convictions. Counsel and the parties should be admonished against repeating on the outside the contents of the minutes beyond their immediate relevance.

For this purpose we temporarily suspend the judgment now on appeal and remand the case for this inquiry by the trial court.

Vacated pro tempore.