**In re Richard L. BAST, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 75–2140.**

United States Court of Appeals,
Fourth Circuit.

Argued May 5, 1976.

Decided Aug. 4, 1976.

Alan J. Cilman, Alexandria, Va., for appellant.

Robert W. Jaspen, Asst. U. S. Atty., Alexandria, Va. (William B. Cummings, U. S. Atty., Norfolk, Va., on brief), for appellee.

Before RUSSELL and WIDENER, Circuit Judges, and WYZANSKI, Senior District Judge.*

WIDENER, Circuit Judge:

This case presents the question of whether Richard L. Bast, a witness before a fed-

eral grand jury, should be furnished with a copy of his testimony. The district court declined to grant his request, and we affirm.

Bast, on or about February 3, 1975, testified before a federal grand jury in Alexandria. He had been subpoenaed to appear, but his appearance was occasioned by his voluntarily going to the United States Attorney and advising that he had information about the matter under investigation, as well as apparently because of additional information Bast had furnished which ultimately came into the hands of the government. The grand jury before which Bast testified returned no indictment. Bast is not a probable defendant, and he did not testify under grant of immunity from prosecution.

He states that he is entitled to a copy of his testimony because it was recorded and a transcript can be made; he is presently suing the government in the district court in the District of Columbia; since he is not bound by any secrecy requirement, a transcript would insure accurate disclosure of his testimony; a transcript is necessary to correct any inadvertent errors in his testimony; a transcript is necessary to combat rumors presently circulating that he is a government informer; and he subsequently may be indicted as a result of his appearance before the grand jury.

■ We begin with the proposition expressed in *United States v. Procter & Gamble*, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958), which acknowledged the "long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts." p. 681, 78 S.Ct. p. 986. "This 'indispensable secrecy of grand jury proceedings' . . . must not be broken except where there is a compelling necessity. There are instances when the need will outweigh the countervailing policy. But they must be shown with particularity." [1]

---

* United States District Court for Massachusetts, sitting by designation.

1. Footnote 6, *Procter & Gamble*, p. 681, 78 S.Ct. p. 986, is here copied:

"6. In the *United States v. Rose*, [3 Cir.] 215 F.2d 617, 628–629, those reasons were summarized as follows:

(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure

p. 682, 78 S.Ct. p. 986. In *Procter & Gamble*, there had been a grand jury investigation for violation of the Sherman Act in which no indictment was returned. This was followed by a civil suit in which the government was using the grand jury transcript to prepare the civil case. The defendants in the civil case moved for discovery under the Rules of Civil Procedure, as well as under Rule 6(e) of the Rules of Criminal Procedure, for production of the minutes of the grand jury proceedings. Although the request was granted by the district court, that ruling was reversed by the Supreme Court because the defendants had not made "showings . . . that without the transcript a defense would be greatly prejudiced or that without reference to it an injustice would be done." p. 682, 78 S.Ct. p. 986. And this despite the fact that the relevancy and usefulness of the grand jury testimony were sufficiently established and that delay and substantial costs occasioned by discovery through depositions would have been avoided. And the court stated "[o]nly strong public policies weigh against disclosure . . . they are present here because of the policy of secrecy of grand jury proceedings." pp. 681–82, 78 S.Ct. p. 987. The Court acknowledged there were cases of particularized need where the secrecy of grand jury proceedings should be lifted discreetly and limitedly. We have also adopted the general proposition of the secrecy of grand jury proceedings in *United States v. Johnson*, 337 F.2d 180 (4th Cir. 1964), and *United States v. Chase*, 372 F.2d 453 (4th Cir. 1967).

■ The standard for review of a district judge's order respecting the release of proceedings before a grand jury is that of abuse of discretion. *Pittsburgh Plate Glass*, 360 U.S. p. 395, 399, 79 S.Ct. 1237, 1240 (1959); *Chase*, p. 466; *United States v.*

*Bryant*, 364 F.2d 598, 601 (4th Cir. 1966); *Johnson*, p. 197. *Procter & Gamble* may indicate that the discretion of a district judge as he may release grand jury proceedings is somewhat circumscribed. The dissent by Mr. Justice Harlan, 356 U.S. p. 685, 78 S.Ct. 983 emphasizes this.

■ We have also adopted the general standard of a particularized need as the showing which must be made before such proceedings are released. *Johnson*, p. 197; *Chase*, p. 466; *Bryant*, p. 600. In *Johnson*, a defendant was denied a copy of his own testimony because he had shown no particularized need. In *Bryant*, we affirmed the district court's declining to make an *in camera* inspection of the grand jury testimony[2] of one witness out of many where no particularized need was shown, and where the government's evidence was sufficient to warrant a conviction without the testimony of the witness. We there followed *Johnson* and quoted that no special impact on the defendant was made to appear, and there was no showing of a threatened injustice from denial. In *Chase*, we denied a defendant the right to inspect the minutes of two grand juries for the purpose of seeking to discover discrepancies in the testimony of witnesses who had appeared there. We stated that the possibility that a witness' testimony had varied between grand juries or from that at his trial would be "insufficient reason to pierce the veil of secrecy which protects the proceedings of such a body." *Chase*, p. 466. While Fed.R.Crim. Pro. 16 as amended in 1966, and later in 1975, may have required a different holding in *Johnson* because a defendant is now entitled to his grand jury testimony under that rule, the reasoning of that case and *Chase* and *Bryant* remains unimpaired as to the general proposition of particularized need. It is difficult to see how a mere witness

the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by

persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt."

2. Cf. *United States v. McGowan*, 423 F.2d 413 (4th Cir. 1970).

before a grand jury could have a need in any event more particularized or urgent than that of a defendant. We accordingly are of opinion that a witness is not automatically entitled to a transcript of his testimony before a federal grand jury and may only obtain it upon a showing of a particularized need. Accord, *In re Bottari*, 453 F.2d 370 (1st Cir. 1972); *In re Grand Jury Witness Subpoenas*, 370 F.Supp. 1282 (S.D.Fla.1974); *In re Alvarez*, 351 F.Supp. 1089 (S.D.Cal.1972). Contra, *In re Russo*, 53 F.R.D. 564 (C.D.Cal.1971); *In re Craven*, 13 Cr.L. 2100 (N.D.Cal.1973). *Bursey v. United States*, 466 F.2d 1059 (9th Cir. 1972), has language which may support the plaintiff's contention, but the holding of the case may as easily be construed as holding that a particularized need was shown. Of like effect is *In re Minkoff*, 349 F.Supp. 154 (D.R. I.1972). *Bursey* concerned a witness who was being subjected to repetitious questions, while *Minkoff* concerned a witness testifying under grant of immunity, having previously refused to testify on the basis of her privilege against self incrimination.[3]

█ In choosing the rule of particularized need, we find more persuasive our previous opinions on the subject. While we recognize that Fed.R.Crim.Pro. 6 imposes no condition of secrecy on the witness, we think it is equally as plain that the rule does not lift the general veil of secrecy which covers grand jury proceedings. It has not been amended in any particular significant here since *Procter & Gamble* construed it.[4] We are of opinion that the secrecy of grand jury proceedings encourages witnesses to

testify without fear of retaliation and protects the independence of the grand jury. *Pittsburgh Plate Glass Company v. United States*, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959); *Posey v. United States*, 416 F.2d 545 (5th Cir. 1969). The practice of shielding grand jury proceedings from discovery is long established and rests on sound policy. It is maintained for the benefit of the grand jury and for the betterment of the grand jury proceedings. Where it becomes necessary to breach the secrecy of proceedings, it should be done discreetly and limitedly, *Johnson* at 197.

█ With these principles in mind, we turn to the claims before us.

Bast's claim that he is entitled to his testimony merely since it was recorded is without merit because he has no absolute right to it absent a particularized need.

His claims that he is not bound by any secrecy requirement and that the transcript is necessary to correct any inadvertent errors are likewise without merit. Bast is not prevented from telling anyone about his testimony before the grand jury. That he may not relate it accurately is no more of a risk in his case than it is in the case of any other witness. Bast points to no possible recording errors in his testimony or any reason any errors which may exist may need correcting. No indictment was returned as a result of his testimony, and he is not the subject of investigation. The possibility that there may have been stenographic errors in Bast's testimony is no different than in the case of any other witness before a grand jury.

---

**3.** The general theme of those cases taking the contrary position to that which we take here is that, since there is no requirement that the witness not relate his testimony, there is no reason he should not have it. This leaves unanswered the Pandora's box of problems necessarily arising from the sale or delivery of such transcript to anyone should the witness be able to acquire it on demand.

**4.** Footnote 5, *Procter & Gamble*, 356 U.S. p. 681, 78 S.Ct. p. 986, is here copied:

"5. Rule 6(e) of the Rules of Criminal Procedure provides in part:

"Disclosure of matters occurring before the grand jury other than its deliberations and the

vote of any juror may be made to the attorneys for the government for use in the performance of their duties. Otherwise a juror, attorney, interpreter or stenographer may disclose matters occurring before the grand jury only when so directed by the court preliminarily to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury. No obligation of secrecy may be imposed upon any person except in accordance with this rule."

The argument that Bast is presently suing the government and needs his testimony for use in that suit was answered by the district court as it provided that he might seek the testimony in that case. We are of opinion this ruling was not an abuse of discretion. See Wright, *Federal Practice and Procedure, Criminal*, Vol. 1, § 106.[5]

The record does not show that any rumors that Bast is a government informer are other than self generated, even if we were to decide (which we do not) that the existence of such might constitute particularized need.

If Bast is indicted as a result of his testimony before the grand jury, he may obtain a copy of his testimony under Fed.R.Crim.Pro. 16(a)(1)(A).

In summary, we adhere to the rule we have expressed in *Bryant*, p. 600, and apply it here as in other cases seeking disclosure of grand jury testimony:

> "Although 'disclosure is wholly proper where the ends of justice require it' [citation omitted], the burden remains on the . . . [person] seeking disclosure 'to show that a "particularized need" exists for the minutes which outweighs the policy of secrecy' of grand jury proceedings."

We do not find that the ends of justice require disclosure, or that a particularized need has been shown, or that the district court abused its discretion.

The judgment of the district court is accordingly

*AFFIRMED.*

WYZANSKI, Senior District Judge (dissenting):

With the greatest respect for my brethren who have the advantage of being, as permanent members of this court, very familiar with local practice and precedent, yet with an awareness that their opinion, is in my view, flatly contrary to the considered analysis of Circuit Judge Hufstedler on behalf of the Court of Appeals for the Ninth Circuit, (see *Bursey v. United States*, 466 F.2d 1059, 1080) and is supported merely by such decisions as *United States v. Johnson*, 337 F.2d 180 (4th Cir., 1964) and *In re Bottari*, 453 F.2d 370 (1st Cir., 1972) [which have been emasculated by the subsequent amendments to F.R.Cr.P. 16(a)(1), as is revealed by Judge Frankel's masterful opinion in *United States v. Projansky*, 44 F.R.D. 550 (S.D.N.Y., 1968) (quoted *in extenso* with approval in *J. Moore, Rules of Criminal Procedure*, par. 16.05[2] footnote 28)] and hence presents a conflict in opinion within the circuits which lays a sound basis for a petition for certiorari addressed to the Supreme Court of the United States, I dissent.

The majority opinion's statement of the issue may require some qualification. It seems to me to be whether, absent a showing by the government that it has borne the burden of proving special overriding reasons for non-disclosure, a witness who voluntarily testified before a grand jury has a right, at his own expense, to secure a copy of an existing transcript of his own testimony.

It is not suggested in the case at bar that the government has shown or could show any extraordinary circumstances militating against disclosure. Nor is there a basis for claiming that the testimony was compelled. Nor is it indicated that furnishing plaintiff with a copy of the transcript of his testimony would involve additional expense, or that plaintiff would be unwilling to meet his fair share of any expense already incurred or hereafter to be incurred.

---

5. In the absence of any indication by the district court that it would not honor a request by the District Court for the District of Columbia to turn over the transcript of Bast's grand jury testimony should it be required in that case, or an indication by the government that it would not be bound by that court's determination even without reference to the district court here, we think the district judge applied the proper rule. The District Court for the District of Columbia is in a much better position than the district court here, or are we, to ascertain whether or not the use of Bast's grand jury testimony is appropriate in that proceeding. See *Atlantic City Electric Company v. A. B. Chance Co.*, 313 F.2d 431, esp. 434 (2d Cir. 1963); *Allis Chalmers Mfg. Co. v. City of Fort Pierce*, 323 F.2d 233 (5th Cir. 1963); *City of Philadelphia v. Westinghouse Electric Corp.*, 210 F.Supp. 486 (E.D.Pa.1962).

In this dissenting opinion there is considered first the equity of the matter, and then the law. As is so often the case, a detailed analysis reveals that fairness, judged by common sense, does not produce a result incompatible with the precise holdings of tribunals of great authority in the law.

Equity indicates that a plaintiff should have the right to secure a copy of the record of what he himself voluntarily told the grand jury. What he said was no secret to him. Nor is he prevented by any rule of law or any moral principle from telling anyone what he said, or from writing out his best recollection and circulating it. Hence, all that is involved in meeting plaintiff's claim is to give him assurance of the correctness of the transcript—a point which excites the sympathy of any judge who has ever read the reporter's record of the judge's own charges to juries, the reporter's account of the judge's colloquies with counsel, and the reporter's typed version of evidence. Nor can it be regarded as other than laudable that the witness prefers to rely and to have the government, and any others who may be interested, rely on a correct transcript rather than on an unverified one, or on the witness' unsupported recollection, or on another's uncorroborated surmise as to what was actually said. It is not easy for an ordinary citizen to appreciate what is fair about repaying one who makes a free disclosure by imposing a restriction which precludes that very person from full awareness of what he has done to forward justice.

To meet such obvious considerations of fairness and decency, the majority relies on what it regards as some special principle applicable to grand juries, particularly as exemplified in *United States v. Procter & Gamble,* 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958) and in (what the majority itself recognizes) the impaired reasoning of *United States v. Johnson,* 337 F.2d 180 (4th Cir. 1967).

Nothing standing in the way of equity appears in decision or dicta in *United States v. Procter & Gamble.* That case was *not* narrowly addressed to the precise question here in issue. There the applicant sought to reach *all* the minutes of a grand jury investigating the corporation. The Supreme Court, 356 U.S. at p. 684, 78 S.Ct. 983 as well as at p. 683, 78 S.Ct. 983 and in its reporter's headnote underlined the point that it would not require "*wholesale* delivery" (italics in the original opinion at p. 684, 78 S.Ct. 983). Transparently, this is quite different from seeking a copy of the evidence the applicant *himself* gave, particularly when that evidence was given *voluntarily.*

Furthermore the rationale of *Procter & Gamble* and of *United States v. Rose,* 3 Cir., 215 F.2d 617, 628–629 (1954) on which *Procter* relied is, for the most part, plainly not relevant to the case at bar. Here, unlike in *Rose,* the government is not seeking "(1) to prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before [the] grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crime; or (5) to protect [an] innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt." [215 F.2d at pp. 628–629] Whatever dangers might be thought plausibly to exist in those five respects do *not* follow from a delivery to a voluntarily-testifying witness of a transcript of his own testimony; they follow, if at all, from the license of the witness to disclose to whomever he pleases his own recollection of what he told the grand jury. And such license the majority, in its third footnote and elsewhere, concedes, as it must, that the witness now enjoys.

The horse is out of the stable, and all that we are considering is whether to lock the

barn door so that the horse may not carry its master's correct colors.

As to the majority's citation of *United States v. Johnson,* 337 F.2d 180 (4th Cir., 1964), nothing need be said in the light of the majority's concession that it proceeds from premises manifestly no longer acceptable since the 1966 and 1975 amendments to F.R.Cr.P. 16(a)(1) which give a defendant a right to a copy of his own grand jury testimony. I would have thought that it followed *a fortiori* that a voluntary witness had a right to a copy of *his* own grand jury testimony; and I have not perceived any basis in policy or history for avoiding that, to me, persuasive proposition.

Without pausing to comment on the other cases cited by the majority, it will be sufficient to invoke the, to this judge, more persuasive opinions to the contrary by Judges Hufstedler and Frankel. Where they stand is where I do, not only out of respect but out of conviction.

Nor is there any support in the instant case for the government's contention that we must respect the trial court's exercise of discretion. That discretion, as the majority, citing Mr. Justice Harlan's dissent in *Procter & Gamble,* 356 U.S. at p. 685, 78 S.Ct. 983 admits, is not unlimited. Here there is no room for discretion because plaintiff as a voluntarily-testifying witness before a grand jury should be recognized as having a *prima facie* right to a copy of the record of his own testimony, at least if he bears the incidental expense and if the government does not bear the heavy burden of showing special grounds for non-delivery.

To deny that right seems to me to be a denial of due process under the Fifth Amendment, and, moreover, to be contrary to what an appellate federal court should tolerate as conforming to standards of just procedure within the federal judicial system.

Therefore, I would reverse the judgment of the district court.