**In re Judith Helene MINKOFF.**

**Misc. No. 7800.**

United States District Court, D. Rhode Island.

Oct. 13, 1972.

Walter Jay Skinner, Boston, Mass., for petitioner.

Lincoln C. Almond, U. S. Atty., for Rhode Island, S. Michael Levin, Sp. Atty., Justice Department, Providence, R. I., for respondent.

## MEMORANDUM OPINION

PETTINE, Chief Judge.

On July 27, 1972 Judith Helene Minkoff appeared before the Grand Jury for the District of Rhode Island and refused to testify on the basis of her privilege against self-incrimination. Pursuant to the provisions of 18 U.S.C. §§ 6002 and 6003, she was ordered to testify after being granted immunity. Counsel for the witness requested at the time that the immunity order be conditioned upon the witness being furnished with a copy of the transcript of her testimony. The Court then reserved judgment as to this matter. I will now pass judgment upon this question.

Although the question of this Court's power to order disclosure of the grand jury minutes of the witness's testimony was not raised, it must first be considered. Under Rule 6(e) of the Federal Rules of Criminal Procedure, the Court has discretion to disclose such grand jury minutes "preliminarily to or in connection with a *judicial proceeding*". (emphasis added). The issue is whether the application of this witness concomitant to a grand jury proceeding falls within the ambit of this rule. This is a novel question.

"Judicial proceeding," however, has not been construed to mean only criminal court proceedings or federal court proceedings. Civil antitrust defendants have been permitted disclosure of the testimony of witnesses who have consented. United States v. Scott Paper

Company, 254 F.Supp. 759 (D.C.Mich. 1966); United States v. Badger Paper Mills, Inc., 243 F.Supp. 443 (D.C.Wis. 1965). And Judge Learned Hand held that a state disbarment proceeding which might lead to a presentment of charges of misconduct to the Appellate Division of the Supreme Court of New York fell within the meaning of the rule. Doe v. Rosenberry, 255 F.2d 118 (2d Cir. 1958). Accord, In re Grand Jury Transcripts, 309 F.Supp. 1050 (S. D.Ohio 1970). Contra, In re Holovachka, 317 F.2d 834 (7th Cir. 1963).

In Doe v. Rosenberry, *supra,* 255 F.2d 120, Judge Hand, in an oft-quoted definition, stated that

" 'judicial proceeding' *includes* any proceeding determinable by a court, having for its object the compliance of any person, subject to judicial control, with standards imposed upon his conduct in the public interest, even though such compliance is enforced without the procedure applicable to the punishment of crime." (Emphasis added.)

But as Judge Hand himself implied, this definition is not all inclusive. A judicial proceeding has also been defined as "any proceeding wherein judicial action is invoked and taken", Mannix v. Portland Telegram, 144 Or. 172, 23 P.2d 138, 90 A.L.R. 55, 59. Under this broader concept of what constitutes a judicial proceeding, I find that a grand jury is such a proceeding.

I concede that the primary function of the grand jury is investigative, but I note that questions of law which arise in such proceedings may be passed on to the District Court judge if the grand jurors so desire. In the last analysis, whether such questions of law are presented to the court or not, issues of error of law are subject to the scrutiny of the court after the indictment is presented. And in the context of the present application, the grand jury proceeding imposes functions upon a judge similar to that which he assumes in a trial, with the judge the arbiter between the power of the state and the constitutional rights of the subpoenaed witness, instead of a defendant.

The relationship between the court and the grand jury has been explained as follows:

"A grand jury is a part of the machinery of government, having for its object the detection and punishment of a crime. It is an adjunct or appendage of the court under whose supervision it is impaneled, and it has no existence aside from that court. It does not become, after it is summoned, impaneled, and sworn, an independent agency, as it were, in the judicial system, but remains an appendage of the court on which it is attending. The grand jury is regarded as an informing or accusing body rather than a judicial tribunal. *But its proceeding is said to be generally regarded as judicial in nature.*" (emphasis added)

38 Am.Jur.2d, Grand Jury § 1 at 947 (footnotes omitted)

■■ On the basis of the above discussion, I therefore find that a grand jury proceeding is a "judicial proceeding" under Rule 6(e). There is, however, a second issue as to whether the court has power under Rule 6(e) to order disclosure prior to the discharge of the grand jury. In the classic situation as represented by the above cited cases, access to grand jury minutes has been permitted for use in subsequent proceedings; naturally the grand jury had already adjourned. In the instant case, the United States Attorney informs me that the grand jury whose minutes are in question is still in session. But my order below is conditioned on adjournment before disclosure so that in this respect the instant case is similar to the above cited cases. Where termination is a condition of disclosure, it is obvious that such disclosure can neither help nor harm the completed investigation. In such circumstances I find I have the power to order disclosure, without deciding today the power of the court to order disclosure of grand jury minutes

which would take effect before the dismissal of the grand jury.

The immunity which was granted to the witness pursuant to 18 U.S.C. §§ 6002 and 6003 is use immunity; that is, in a subsequent prosecution of the witness, the prosecutor has the burden of proving that his evidence is untainted and has emanated from sources wholly independent of the compelled testimony. Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212. This affirmative burden of proof, first stated by the court in Murphy et al. v. Waterfront Commission, 378 U.S. 52, 79 n. 18, 84 S.Ct. 1594, 1609, 12 L.Ed.2d 678, shifts to the federal authorities "[o]nce a defendant demonstrates that he has testified, under a state grant of immunity, to matters related to the federal prosecution".

It is the contention of the government that this affirmative burden of proof, which, it submits, may be initiated by an affidavit and a copy of the immunity order, affords the witness the protection to which she is entitled, not the witness's possession of the transcript. The Court finds this reasoning unpersuasive. More sound is the logic of Justice Marshall in a statement which illustrates the weakness of the government's argument. He wrote:

"  .   .   .  though the Court puts the burden of proof on the Government, the Government will have no difficulty in meeting its burden by mere assertion if the witness produces no contrary evidence. The good faith of the prosecuting authorities is thus the sole safeguard of the witness' rights. Second, even their good faith is not a sufficient safeguard. For the paths of information through the investigative bureaucracy may well be long and winding, and even a prosecutor acting in the best of faith cannot be certain that somewhere in the depths of his investigative apparatus, often including hundreds of employees, there was not some prohibited use of the compelled testimony."

Kastigar v. United States, *supra*, 406 U.S. 469, 92 S.Ct. 1669 (dissent)

The ability of witness-defendant's counsel to scrutinize the transcript of the compelled testimony will allow him to challenge every iota of evidence which may have derived from leads in the subpoenaed witness's testimony. A copy of the transcript is but one more check against tainted evidence.

Furthermore, the Fifth Amendment privilege "reflects a complex of our fundamental values and aspirations, and marks an important advance in the development of our liberty." *Kastigar, supra*, 444, 92 S.Ct. 1656. This Court would have to be presented with a compelling reason to deny the additional safeguard requested. In fact, this Court cannot discern any reason not to grant a witness his transcript.

Traditionally, a prime justification for grand jury secrecy has been "to encourage witnesses to testify without fear of retaliation and to protect the independence of the grand jury." Posey v. United States, 416 F.2d 545, 557 (5th Cir. 1969), cert. den. Snowden v. United States, 397 U.S. 946, 90 S.Ct. 964, 25 L. Ed.2d 127, reh. den. 397 U.S. 1031, 90 S.Ct. 1267, 25 L.Ed.2d 544. Release to a witness of his own testimony at the termination of the grand jury proceedings in no way impedes the goal of unhindered disclosure by the witness. See In re Russo, 53 F.R.D. 564 (D.C.Calif.). The assurance that he would have a copy of his statement might even function as a catalyst to his testimony.

Secondly, Rule 6(e) does not impose any obligation of secrecy on witnesses. The Advisory Committee's note on Rule 6(e) states:

"The seal of secrecy on witnesses seems an unnecessary hardship and may lead to injustice if a witness is not permitted to make a disclosure to counsel or to an associate."

18 U.S.C.A. Rule 6 at 234.

Providing the witness with a transcript only serves to protect him after memory fails. Prosecution may be brought

years after his testimony, and it is not only conceivable, but probable that a lapse of memory will occur.

Thirdly, the cases which do restrict the disclosure of grand jury minutes concern the right of a defendant to secure the testimony of witnesses other than himself. See 1 Wright, Federal Practice and Procedure § 108 and cases cited therein. However, under Rule 16(a)(3) the court may grant to the defendant his own recorded testimony. Although there is some debate as to whether such disclosure is mandatory or permissive (see 8 J. Moore, Federal Practice § 16.05(2); 1 Wright, Federal Practice and Procedure § 253), the better reasoned opinions find such a disclosure either an absolute right or a request which should be routinely granted unless the government presents strong justification otherwise. United States v. Tanner, 279 F.Supp. 457, 472 (D.C. Ill.1967); United States v. Projansky, 44 F.R.D. 550 (S.D.N.Y.1968). And the 1970 proposed revision of Rule 16 makes such disclosure mandatory without a showing of relevance. 48 F.R.D. 558. There is no reason to deny the witness an analogous right as a buttress to his Fifth Amendment privilege. Surely the protection of the right against self-incrimination is as weighty a policy as the policy which favors pre-trial disclosure.

Finally, this Court can perceive no prejudice to the government by the allowance of this disclosure. As is discussed *supra*, such disclosure would not be a violation of the policy for secrecy. And there is no merit in a paranoid secrecy for the sake of secrecy itself. As one commentator has stated:

> "Secrecy in government is a current problem of considerable magnitude and just as it must be restricted to the necessary minimum in political affairs, so all the more must it be excluded from the processes of law."

> Sherry, Grand Jury Minutes: The Unreasonable Rules of Secrecy, 48 Va. L.Rev. 668, 669 (1962).

 The government has proposed that the transcript of the witness be impounded in the Office of the Clerk of this Court as an alternative to giving the witness a copy. As is argued by witness's counsel, future prosecution may occur in any one of several hundred jurisdictions in the United States. Adequate protection is rendered to the witness only by providing her with a transcript of her statement. It is therefore ordered that a transcript of her testimony be provided the witness at the adjournment of the Grand Jury.