UNITED STATES of America, Plaintiff-Appellee,

v.

Orville S. CLAVEY, Defendant-Appellant.

No. 76–1926.

United States Court of Appeals, Seventh Circuit.

Argued April 8, 1977.

Decided Oct. 31, 1977.

Rehearing En Banc Granted Feb. 28, 1978.

George B. Collins, Chicago, Ill., for defendant-appellant.

Samuel K. Skinner, U. S. Atty., Richard C. Leng, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee.

Before SWYGERT, WOOD and BAUER, Circuit Judges.

BAUER, Circuit Judge.

Clavey was charged in an eight-count indictment specifying four counts of false swearing before a grand jury, three counts of failure to report income on his tax returns, and one count of conspiracy to extort funds from a liquor license holder. The Government established at trial that, while serving as Sheriff of Lake County, Illinois, Clavey received unreported income from several county residents in a series of transactions effected through his chief deputy, Jerome P. Schuetz, who testified against Clavey under a grant of immunity from prosecution. The jury ultimately acquitted Clavey of three of the false swearing counts and the extortion count, and convicted him of one count of false swearing and the three tax counts. He seeks reversal of his convictions on several grounds, the most significant of which are that the district court committed reversible error (1) by refusing to release a transcript of his grand jury testimony, (2) by refusing to admit evidence Clavey offered to rebut the testimony of a government witness, (3) by erroneously instructing the jury, and (4) by not responding to the jury's request for supplementary instructions during its deliberations and failing to advise counsel of the jury's inquiries to the court. We affirm his convictions for the reasons noted below.

## I.

Clavey first contends that he was deprived of the effective assistance of counsel during the grand jury proceedings which led to his indictment.

Clavey appeared before the grand jury on two occasions without counsel. He retained counsel about five weeks after his second appearance. At that time, his counsel filed two unverified petitions with the district court for the release of a transcript of Clavey's grand jury testimony so that he could advise Clavey whether or not to recant aspects of his prior testimony pursuant to the right established in 18 U.S.C. § 1623(d), which provides:

"(d) Where, in the same continuous court or grand jury proceeding in which a declaration is made, the person making the declaration admits such declaration to be false, such admission shall bar prosecution under this section if, at the time the admission is made, the declaration has not substantially affected the proceeding, or it has not become manifest that such falsity has been or will be exposed."

In the petitions, Clavey alleged that he could not recall the substance or detail of his testimony because of an illness and a skull fracture that adversely affected his memory.

Chief Judge Robson of the District Court for the Northern District of Illinois denied both petitions on the ground that Clavey had failed "to demonstrate with particularity a 'compelling necessity' for disclosure." Approximately four months later the same

grand jury returned the indictment in this case.

After the indictment was returned, Clavey moved to suppress it on the ground that he was denied the effective assistance of counsel in asserting his right to recant under 18 U.S.C. § 1623(d) by Judge Robson's refusal to release a transcript of Clavey's grand jury testimony to his counsel. Judge Lynch[1] denied the motion, and Clavey reasserts the claim here.

Federal Rule of Criminal Procedure 6(e) permits district courts to order the disclosure of grand jury testimony to persons other than attorneys for the Government "preliminarily to or in connection with a judicial proceeding."

We recently reviewed the standards to be applied by district courts in deciding whether to disclose grand jury testimony upon request:

"The Supreme Court has declared that the secrecy protected by Rule 6(e) 'must not be broken except where there is a compelling necessity,' which 'must be shown with particularity.' *United States v. Procter & Gamble Co.* [356 U.S. 677, 682, 78 S.Ct. 983, 2 L.Ed.2d 1077]; *Pittsburgh Plate Glass Co. v. United States,* 360 U.S. 395, 399–400, 79 S.Ct. 1237, 3 L.Ed.2d 1323. . . . [T]here still exists . . . in . . . cases in which disclosure is not provided for as a matter of right in 18 U.S.C. § 3500(e)(3) and Rule 16(a)(1)(A), Fed.R.Crim.P., a requirement that the party seeking disclosure show a need commensurate with the degree of secrecy remaining and the policy reason that justifies that secrecy." *Illinois v. Sarbaugh,* 552 F.2d 768, 774 (7th Cir. 1977).

■ Inasmuch as Clavey was not entitled to a transcript of his testimony as a matter of right, the analysis set forth in *Sarbaugh* is applicable here. In the circumstances of this case, we agree with Judge Robson that Clavey did not establish a sufficiently "compelling" need for disclosure that outweighed the need to preserve grand jury secrecy.

We find significant, as did the district court, that Clavey refused to verify his petition as the district court requested. Though the purpose for which Clavey sought the transcript is no doubt a proper one, in that the transcript was sought in aid of his right to recant his prior testimony, we believe the district court was appropriately skeptical of Clavey's unverified claim that he was unable to recall his prior testimony because of a poor memory attributable to physical impairments. Absent verification of Clavey's ailments, there was no reason for the district court to assume that a transcript was essential to facilitate effective attorney-client deliberations concerning the possibility of Clavey's recanting his prior testimony. Cf. *United States v. Cowsen,* 530 F.2d 734, 736 (7th Cir.), cert. denied, 426 U.S. 906, 96 S.Ct. 2227, 48 L.Ed.2d 831 (1976). Moreover, we note that, even without a transcript, Clavey could have obtained any information concerning his prior testimony needed by his attorney by reappearing before the grand jury and requesting a review of his testimony. During such an appearance Clavey could have communicated with counsel at any time outside the grand jury room.

The policy reasons justifying strict preservation of the secrecy of ongoing grand jury proceedings are compelling and should not be lightly discounted simply because a witness asserts an unverified need for a transcript of his prior testimony.[2] In view

---

1. The Hon. William J. Lynch presided over the trial in this matter, but died before sentencing. Judge Decker imposed sentence.

2. In *United States v. Procter & Gamble Co.,* 356 U.S. 677, 681 n. 6, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958), the Supreme Court summarized the historical justifications for preserving grand jury secrecy:

"(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the

of Clavey's failure to verify with particularity a compelling necessity for a transcript of his prior testimony, we do not believe the district court denied him the effective assistance of counsel by refusing to release a transcript to him. See *Bast v. United States*, 542 F.2d 893 (4th Cir. 1976); *United States v. DiSalvo*, 251 F.Supp. 740, 746 (S.D. N.Y. 1966).

## II.

Clavey's next argument is that the district court erred in refusing to admit evidence offered to rebut the testimony of Gene March, a government witness, that March had bribed Clavey with a $400 check to obtain a $1000 lie detector contract with the sheriff's office. Clavey contended that March's check, which Clavey had cashed, constituted repayment of a loan. March testified that he wrote "RT loan" on the face of the check, but only at Clavey's request. To impeach March's testimony that the check was a bribe rather than a loan repayment, Clavey's counsel sought to admit evidence during his cross-examination of March and again during his case-in-chief that March had sought and obtained a personal loan from a Frederick Hedblum at approximately the same time he paid Clavey the $400. The trial judge refused to admit the evidence, and Clavey contends on appeal that his refusal constituted reversible error.

■ We agree with Clavey that evidence of March's financial condition was relevant to the issue of whether Clavey had loaned him funds in the limited sense that it tended to make Clavey's theory slightly "more probable . . . than it would [have been] without the evidence." Fed.R.Evid. 401. However, relevant evidence may be excluded

"if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R.Evid. 403.

The evidence here of a transaction in which the defendant did not partake was of limited probative value, and we cannot say that the trial judge abused his broad discretion under Rule 403 in determining that the evidence would have tended to confuse the issues and unduly consume time. *United States v. Robinson*, 503 F.2d 208, 216 (7th Cir. 1974), *cert. denied*, 420 U.S. 949, 95 S.Ct. 1333, 43 L.Ed.2d 427 (1975).

## III.

Clavey challenges the court's charge to the jury in several respects.

### A. Campaign Contribution Instruction

Clavey first argues that the court erred in allowing the jury to consider whether he diverted campaign funds to his own use when there was no evidence to support such a charge.

■ On the first day of the trial the bank account records of Clavey's campaign fund were admitted into evidence without objection. As the trial proceeded, however, neither side made use of the records or included them in their respective theories of prosecution or defense. Nevertheless, over Clavey's objection, the court instructed the jury:

"If you find beyond a reasonable doubt that funds contributed to a political campaign were diverted to the defendant's personal use, then under the law these funds are income taxable to the defendant." [3]

Clavey contends that the court committed reversible error in giving the campaign

---

witnesses who may testify before the grand jury and later appear at trials of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect the innocent accused who is exonerated . . . . ."

3. The instruction properly states the law. *United States v. Miriani*, 422 F.2d 150, 152 (6th Cir.), *cert. denied*, 399 U.S. 910, 90 S.Ct. 2199, 26 L.Ed.2d 561 (1970).

fund instruction because it provided the jury with a basis for convicting Clavey not rooted in the evidence. The Government concedes that the instruction was not supported by the evidence at trial, but argues that its inclusion in the charge was harmless error.

We agree with the Government that the instruction was harmless because, in the circumstances of this case, the jury could not have been misled by it. By its own terms, the instruction required the jury to find beyond a reasonable doubt that campaign funds were diverted to Clavey's personal use before arriving at the conclusion that such funds constituted income taxable to Clavey. Because there was no evidence that any campaign funds were ever diverted to Clavey's personal use, the jury could not have convicted Clavey on the basis of the campaign fund instruction. See *United States v. Demopoulos*, 506 F.2d 1171, 1180 (7th Cir. 1974), *cert. denied*, 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 673 (1975); *Long v. United States*, 124 U.S.App.D.C. 14, 20, 360 F.2d 829, 835 (1966).

B. *"Material Matter" Instruction*

■ Clavey was convicted of violating 26 U.S.C. § 7206(1), which states that any person who

"[w]illfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter . . . shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $5000, or imprisoned not more than 3 years, or both, together with the costs of prosecution."

In instructing the jury on the meaning of "material matter" in Section 7206(1), the district court stated:

"Under the law the term 'material matter' refers to any item which would tend to influence the Internal Revenue Service in its normal tax collection and processing procedures. It is not necessary that

the government prove that the defendant omitted any specified amount or total amount in Counts 5, 6 or 7. All that is necessary is that the government prove that the return was false as to a material matter."

Clavey argues on appeal that, in view of the absence of evidence as to IRS standards of materiality, this instruction was erroneous because it left the jury free to speculate as to the meaning of "material matter."

We agree with Clavey that, absent evidence of IRS materiality standards, this instruction was of little assistance to the jury in determining what constituted material matter. However, Clavey could not have been prejudiced by the giving of the instruction because the only false statements the Government charged that Clavey had made on his income tax return—those statements reporting his gross income—were clearly material matters for purposes of 26 U.S.C. § 7206(1). See *United States v. DiVarco*, 343 F.Supp. 101, 102 (N.D.Ill. 1972), and cases cited therein.

C. *Motive Instruction*

■ Clavey next argues that the court erred in giving the following instruction:

"Motive is what prompts a person to act or fail to act. If you find beyond a reasonable doubt that the defendant knowingly and wilfully accepted any of the payments about which evidence was presented you may, if you choose to do so, consider the circumstances surrounding the payments and the purposes for which they were made as providing a motive for the commission of the crimes charged in Counts 1, 2, 3, 5, 6, 7, and 8 of the indictment.

He claims that the instruction he tendered should have been given instead. His instruction, taken from Devitt & Blackmar, 1 *Federal Jury Practice and Instructions* § 13.05 (2d ed. 1970), is identical to the instruction given by the court except for the addition of two sentences: At the beginning, Clavey's instruction adds, "Intent and motive should never be confused"; at the end it adds, "The motive of the accused

is immaterial except insofar as evidence of motive may aid determination of state of mind or intent." Clavey argues that the omission of these phrases in the court's instruction confused the jury as to the effect they should give motive and made it possible for the jury to substitute proof of motive for proof of the intent element of the crimes charged.

We agree with Clavey that, if the court chooses to give a motive instruction at all, the standard instruction tendered by Clavey is preferable to the one given here because it more clearly explains the proper role of motive in the case. Nevertheless, in view of the other comprehensive instructions on the mens rea of the crime charged given by the court, the motive instruction could have been interpreted only as suggesting another factor to be considered by the jury—the instruction's proper function—rather than as providing a substitute means for proving the mens rea of the charged crimes. The court instructed the jurors that they had to find beyond a reasonable doubt that Clavey had the requisite specific intent for the crimes charged, viz., that he "knowingly did an act which the law forbids, purposely intending to violate the law" (Tr. 1421). The court went on to painstakingly instruct the jury on the meaning of "knowingly" and "wilfully," and set out all of the elements, including the mens rea, of each of the counts charged. We believe that the jury was properly instructed as to intent, and that the jury was not invited to confuse intent with motive.

D. *Character Instruction*

Clavey next claims that the court erred by not giving his tendered character evi-

dence instruction. The Government responds that Clavey did not properly object to the failure of the trial court to give such an instruction, and that Clavey thus is precluded by Rule 30 of the Federal Rules of Criminal Procedure [4] from asserting his claim.[5]

Prior to the end of the defense's case, both sides submitted numbered instructions. Later, near the end of the trial, Judge Lynch told counsel:

"Tomorrow we will proceed with what we have left and what you might have to present, and we know definitely we will go into the question of instructions. They don't take too long, most of them, a great majority of them, they will be specials, I know, and I had anticipated some of them, and they are stock."

Clavey's counsel then stated:

"I had not included the character evidence on the charge yet, and I will bring that over."

Judge Lynch replied, "You mean on the instructions? Include it." The next day Clavey's counsel filed detailed objections to the Government's proposed instructions and attached several unnumbered instructions of his own, including a character evidence instruction. That afternoon, an instruction conference was held. Prior to the conference, defense counsel asked the court to consider his written objections as part of the record even if he did not reiterate them orally. At no time during the conference did he point out his recently tendered character evidence instruction.

After Judge Lynch instructed the jury, defense counsel objected to specific instruc-

4. Rule 30 of the Federal Rules of Criminal Procedure provides:

"At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to adverse parties. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party

may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury and, on request of any party, out of the presence of the jury."

5. The Government, pointing out that both sides presented evidence as to Clavey's reputation, does not challenge Clavey's contention that such an instruction should have been given

tions that were given and then engaged in the following colloquy with the judge:

"Mr. Collins: The other thing, Judge, is I ask you again to consider all the objections in my written objections in the tendered instructions, which we tendered, which your honor has not given, and please, your Honor, give me a ruling.

The Court: I will. I have given them consideration and judgment is that they are overruled.

Mr. Collins: In the instructions we tendered, there were—.

The Court: They were refused.

Mr. Collins: Thank you very much, Judge.

The Court: I think I have marked them refused.

Mr. Collins: I believe so, Judge."

At no point did defense counsel indicate to the court that his character evidence instruction had not been given and had not been marked refused.

While defense counsel did tender a character evidence instruction, we hold that he waived his right to object on appeal to the court's failure to give the instruction because he did not sufficiently bring the instruction to the court's attention. Rule 30 requires parties wishing to object to "any portion of the charge or *omission therefrom* " to "stat[e] distinctly the matter to which he objects and the grounds of his objection." Fed.R.Crim.Proc. 30 (emphasis added). Counsel's passing mention at the end of a day's testimony of his intention to tender the instruction and his attachment of the instruction to a list of objections was not sufficient in our opinion to meet Rule 30 standards. See *United States v. Wright*, 542 F.2d 975, 983–85 (7th Cir. 1976), *cert. denied*, 429 U.S. 1073, 97 S.Ct. 810, 50 L.Ed.2d 790 (1977). The defense was given an opportunity to distinctly object on the record to the omission of the instruction both at the instruction conference prior to the reading of the instructions and at the post-instruction conference. Counsel failed to mention the omission of the character evidence instruction during either conference. See generally, *United States v. Hollinger*, 553 F.2d 535, 539–43 (7th Cir. 1977).

## IV.

Finally, Clavey argues that the court erred by not informing counsel of inquiries from the deliberating jury and by not responding to them.

While the jury was deliberating, the foreman sent a note to the court at 5 p. m. on the evening before the verdict was reached. The note read:

"Is it possible to have copies of the instructions [sent] to the jury?"

The answer was, "No." The defendant was not notified of the request, and his counsel had no opportunity to urge the court that the instructions be sent to the jury.[6]

Later, apparently during the evening, the jury sent the following note to the court on the same piece of paper:

"Is it possible to have the judge explain a couple of points about the indictment and counts?"

The judge reported to counsel the next day that

"the answer to that [inquiry] was 'No,' because I will not become the thirteenth juror in this case, and I should not invade the province of the jury, which I did not do. The answer to the question to the jury, carried to them by the deputy United States Marshal, was to 'continue to deliberate.' "

The jury spent the night at a hotel, and the next morning sent another note to the court:

"Judge Lynch: The counts in the indictment are related to one another, some more than others. For example, count 2 is related to count five. In this respect, if we find the defendant guilty on count two and on count three, must we also find him guilt on count one? Spencer R. Sawyer, Foreman."

---

**6.** Defense counsel had previously requested that copies of the instructions be given to the jury.

The court replied that the jury should "continue to deliberate." Ten minutes later the jury reached a verdict.

██ We think Clavey's contentions that the court should have advised counsel of the jury's inquiries and made an effort to respond to them have merit. Federal Rule of Criminal Procedure 43 guarantees a defendant in a criminal trial the right to be present "at every stage of the trial including the impaneling of the jury and the return of the verdict." This guarantee includes the right to be present when communications are made to a deliberating jury. *Rogers v. United States*, 422 U.S. 35, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975); *Shields v. United States*, 273 U.S. 583, 47 S.Ct. 478, 71 L.Ed. 787 (1927); *Fillippon v. Albion Vein Slate Co.*, 250 U.S. 76, 39 S.Ct. 435, 63 L.Ed. 853 (1919). As the Supreme Court said in *Rogers*,

"Cases interpreting the Rule make it clear . . . that the jury's message should [be] answered in open court and that [defense] counsel should [be] given an opportunity to be heard before the trial judge respond[s]." 422 U.S. at 39, 95 S.Ct. at 2095.

Moreover, the Supreme Court has held that "[d]ischarge of the jury's responsibility . . . depend[s] on discharge of the judge's responsibility to give the jury the required guidance by a lucid statement of the relevant legal criteria. When a jury makes explicit its difficulties, a trial judge should clear them away with concrete accuracy." *Bollenbach v. United States*, 326 U.S. 607, 612–13, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946).

The jury's final two questions, particularly the last one, indicate that the jury was encountering difficulty with the instructions in this relatively complex case. The trial judge's perfunctory answers were clearly inadequate responses to the jury's inquiries. *See United States v. Harris*, 388 F.2d 373, 377 (7th Cir. 1967); *United States v. Bolden*, 169 U.S.App.D.C. 60, 67–68, 514 F.2d 1301, 1308–09 (1975). At a minimum, the judge should have reread whatever portions of the original instructions given to

the jury that the jury requested or that related to its inquiry. *See United States v. Papia*, 560 F.2d 827, at 843–844 (7th Cir. 1977).

While we agree that the court erred in not informing counsel of the jury's inquiries and in not making a reasonable effort to clear up the jury's difficulties, we must still determine whether the court's errors were harmless. *See United States v. Dellinger*, 472 F.2d 340, 378–79 (7th Cir. 1972), *cert. denied*, 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706 (1973); *Ware v. United States*, 376 F.2d 717 (7th Cir. 1967).

██ In view of the particular questions asked by the jury, we hold that the court's errors were indeed harmless. As to the jury's request for written instructions, we are convinced that the judge's failure to inform the parties of the request or to grant it could not have affected the jury's verdict. Cf. *United States v. Hoffa*, 367 F.2d 698, 712–13 (7th Cir. 1966), *vacated on other grounds*, 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1967). The submission of written instructions to the jury is a matter within the trial court's discretion. E. g., *United States v. Davis*, 437 F.2d 928, 929 n. 1 (7th Cir. 1971); *United States v. Standard Oil Co.*, 316 F.2d 884, 896 (7th Cir. 1963).

The latter two questions appear to be interrelated. In the second question, asked during the evening, the jury requested an explanation of "a couple of points about the indictment and counts." The following morning the jury asked for specific information concerning the relationship between certain counts in the indictment. Read together, the latter question appears to be simply a specific version of the former. At a minimum, it reflects that aspects of the uncertainty that generated the second question still concerned the jury.

Because Clavey was acquitted of counts one and two, however, we can infer that the jury resolved the third question—whether Clavey had to be found guilty on counts one and two if he was found guilty on the related counts five and three—in favor of the defendant. In view of this resolution,

Clavey could not have been harmed by the judge's failure to answer the jury's question, for the judge's answer could not have produced a more favorable result for him. Moreover, because the difficulty that engendered the jury's second question was reflected in the third question, resolved in the defendant's favor, we are convinced that the judge's failure to respond to that question is harmless error as well.

## V.

We have carefully considered the other points raised by Clavey and find them also to be without merit.

AFFIRMED.

SWYGERT, Circuit Judge, dissenting.

I respectfully dissent upon several grounds. They include the refusal to give the defendant a copy of his own grand jury testimony, the giving of erroneous jury instructions, and the trial judge's failure to inform counsel of the jury communications and to respond to their questions.

## I

The majority holds that the defendant was not entitled to a transcript of his own grand jury testimony because he failed to demonstrate with particularity a compelling necessity for disclosure. This conclusion, I submit, is erroneous for two reasons. First, the district court should not have applied the "particularized need" standard when confronted with a request by a grand jury witness for a copy of his own testimony. I believe that a witness has a *prima facie* right to a copy of his own testimony in all cases unless the Government can show special overriding reasons for nondisclosure. Second, even using this "particularized need" test, the district court still erred in finding no showing of a particularized need in the circumstances presented in this case.

## A

The majority, citing our recent decision in *Illinois v. Sarbaugh*, 552 F.2d 768 (7th Cir. 1977), holds that a witness is not entitled to his grand jury testimony as a matter of right and that therefore the particularized need standard must be employed. I believe the majority was too quick in its decision, for both reason and equity dictate that there is no justification for imposing secrecy in this instance. Disclosure to a witness of his own testimony will neither limit the effectiveness of the grand jury nor place the protection of witnesses in jeopardy.

The particularized need standard was formulated to deal with a request for the grand jury testimony of another witness. Under this standard, the need for the testimony is weighed against the need for maintaining grand jury secrecy and the need to free witnesses from testifying under apprehension that their testimony may be disclosed.[1] All of the cases in which the Supreme Court has applied the particularized need standard have involved witnesses seeking access to the testimony of other witnesses before the grand jury, *see Dennis v. United States*, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966); *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 79 S.Ct. 1237, 3 L.Ed.2d 1323 (1959); *United States v. Procter & Gamble Co.*, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958); *see also Sarbaugh, supra,* and not a witness seeking a copy of his own testimony. To avoid blindly extending the particularized need standard and preserving secrecy for secrecy's sake, we must carefully consider whether that standard should be applied in this context.

Rule 6(e) of the Federal Rules of Criminal Procedure imposes no bond of secrecy on a grand jury witness, he is free to disclose all that transpired while he was present. Rule 6(e) purposely excludes witnesses from the general nondisclosure re-

---

1. Professor Wigmore states that the nondisclosure of a witness' testimony is a privilege of the witness himself, not of the grand jury panel or of the Government. 8 J. Wigmore, Evidence § 2362, at 736 (McNaughton rev. 1961).

quirement[2] because "[t]he seal of secrecy on witnesses seems an unnecessary hardship and may lead to injustice if a witness is not permitted to make a disclosure to counsel or to an associate." Original Advisory Committee Notes to Rule 6(e). Thus, a witness is already allowed to disclose the very information which the defendant here attempted to obtain.

A review of the reasons traditionally advanced for justifying the veil of secrecy upon grand juries shows that none dictates that a witness should be denied a copy of his own testimony.[3] Furnishing a witness with a written transcript of his testimony could no more interfere with the functions of the grand jury than the existing practice of leaving the witness free to disclose orally his testimony to others.[4] The "evil," if any, is in the witness' freedom to disclose, not in furnishing him a transcript. As Judge Wyzanski aptly stated in this regard:

> The horse is out of the stable, and all that we are considering is whether to lock the barn door so that the horse may not carry its master's correct colors. *Bast v. United States*, 542 F.2d 893, 898–99 (4th Cir. 1976) (dissenting opinion).

**2.** Fed.R.Crim.P. 6(e) does, however, *impose* secrecy upon jurors, attorneys, interpreters, stenographers, operators of recording devices, and typists.

**3.** The following five justifications for grand jury secrecy are generally recognized by courts:

> (1) To prevent the escape of those whose indictments may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before the grand jury and later appear at the trials of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect the innocent accused who is exonerated. *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681 n. 6, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958), *quoting United States v. Rose*, 215 F.2d 617, 628–29 (3d Cir. 1954).

The second and fourth justifications for secrecy are clearly inapplicable to a witness who seeks his own testimony. Permitting a witness to disclose his testimony does not interfere with the jurors' ability to deliberate and vote in secrecy. Nor will disclosure serve to interfere with a witness' full disclosure before the grand jury. Release to a witness of his own testimony does not cause that witness any apprehension that his testimony will be disclosed if he does not want it disclosed; if anything, the assurance that a witness will receive a copy of his statement might function as a catalyst to his testimony. *In re Minkoff*, 349 F.Supp. 154, 157 (D.R.I.1972).

Nor do the other reasons apply with any force. The first and third reasons—to prevent escape and the subornation of perjury—are not valid since the witness is already free to disclose all he knows. If a witness chooses to aid the guilty accused, a transcript will not help him more than the freedom he already possesses.

The last justification—to protect the innocent accused who is not indicted—deserves special scrutiny. Again, the witness' freedom to disclose his own testimony makes production of a written copy no more damaging to the grand jury's secrecy. Further, the thirty year history of Rule 6(e) and the absence of criticism of that rule indicate that the innocent accused will not suffer if a transcript is made available to witnesses. *See In re Russo*, 53 F.R.D. 564, 571 (C.D.Calif.1971).

In short, I find no meaningful difference between granting a witness the freedom to disclose under Rule 6(e) and giving him a copy of his testimony.

**4.** *In re Grand Jury Witness Subpoenas*, 370 F.Supp. 1282 (S.D.Fla.1972), in denying disclosure to a witness, held that one reason for nondisclosure was to protect the witness from his own poor judgment. That court stated that a witness is not always in the best position to determine whether to obtain a transcript since "a witness may not realize the significance of his testimony at the time he seeks disclosure." *Id.* at 1285. The court stated that a witness who obtained disclosure could fall prey to intimidation by those persons being investigated. Such a witness, the court urged, will find it more difficult to deny having given useful testimony.

I find such an argument to be speculative at best and paternalistic at worst. The validity of a rule protecting a person not wanting protection is nonsensical. It may be in the witness' interest to have a copy of his testimony so that he may assure his associates that he did not violate their trust when he testified about their activities. In any event, the need for witness' protection can best be evaluated by those who know their interests the best—the witnesses themselves.

Because there are no valid considerations which militate in favor of grand jury secrecy in this case, and because numerous benefits to the witness will inure from disclosure,[5] justice requires that a witness be given access to his own testimony unless the Government affirmatively establishes a substantial reason why it should be withheld.

This conclusion is buttressed by Rule 16(a)(1)(A) which states that a defendant is entitled as a matter of right to a copy of his own testimony before the grand jury. As the Third Circuit stated in *United States v. Rose*, 215 F.2d 617, 630 (3d Cir. 1954), before the amendment to Rule 16 which makes disclosure mandatory:

> Since all the defendant desires is a transcript of his *own* testimony, the sanctity of that which transpired before the Grand Jury is hardly in question. In addition, such disclosure would not subvert any of the reasons traditionally given for the inviolability of Grand Jury proceedings. (emphasis in original)

If a defendant's access to his own testimony does not violate the sanctity of grand jury secrecy, it follows *a fortiori* that a witness seeking his own testimony does not do so. To hold otherwise would be to "exalt the principle of secrecy for secrecy's sake." *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 407, 79 S.Ct. 1237, 1245, 3 L.Ed.2d 1323 (1959) (Brennan, J., dissenting).

The reasons underlying grand jury secrecy are compelling. This secrecy, however, cannot be used as a talisman to ward off further inquiry whether it serves a legitimate function under certain circumstances. As Mr. Justice Brennan again observed:

Grand Jury secrecy is, of course, not an end in itself. Grand Jury secrecy is maintained to serve particular ends. But when secrecy will not serve those ends . . . secrecy may and should be lifted. *Pittsburgh Plate Glass Co., supra* at 403, 79 S.Ct. at 1242.

As secrecy would serve no purpose in this case, disclosure should have been permitted.

### B

Though I believe a discussion whether the defendant demonstrated a particularized need is irrelevant, I am constrained to address this issue because I believe the majority misinterpreted and misapplied that standard.

When the particularized need standard is used, the party seeking disclosure must show a need commensurate with the reasons justifying secrecy. *Illinois v. Sarbaugh*, 552 F.2d 768, 774 (7th Cir. 1977). Because the level of need diminishes as the reasons for secrecy become less compelling, *id.*, we must first identify those justifications of secrecy which would be undermined by disclosure before we can determine whether the alleged need for disclosure outweighs the policy of secrecy.

Although the majority pays homage to the historic sanctity of grand jury secrecy, it makes no showing how the denial of the defendant's grand jury testimony serves any of the purposes justifying secrecy. As noted earlier, I believe that no reason justifying grand jury secrecy applies when a witness seeks a copy of his own testimony.

The question, then, is whether, given the absence of reasons justifying secrecy here,

---

**5.** Requiring that a transcript be accessible to a witness has numerous benefits for the witness. A written transcript will insure that the witness' attorney is provided with an accurate record of the proceedings. It gives the witness and his attorney an opportunity to correct errors in the transcript or inadvertent mistakes in the testimony itself, or, as in the present case, to exercise his right to recant his testimony under 18 U.S.C. § 1623(d).

Other benefits inure from disclosure. A written transcript would minimize the possibility of a witness publicizing false information regarding grand jury proceedings. It can also be used to illuminate prosecutorial excesses such as witness badgering or improper scope of investigation. *See Bursey v. United States*, 466 F.2d 1059, 1079–80 (9th Cir. 1972). Further, a transcript gives an immunized witness who testifies to crimes for which he is later indicted a check against tainted evidence; it assures him that his testimony or the fruits thereof will not be used against him under the guise of information obtained from other independent sources. *See In re Minkoff*, 349 F.Supp. 154, 157 (D.R.I. 1972).

the defendant has shown a sufficient level of particularized need to warrant disclosure. In this case, the defendant alleged that he could not recall the substance of his two grand jury appearances because of an illness and a skull fracture that adversely affected his memory. Because he could not remember the substance of his testimony, the defendant claimed that he needed a transcript so that he could seek legal advice as to whether to exercise his right to recant under 18 U.S.C. § 1623(d). Both of the defendant's requests were denied, the district court holding that defendant failed "to demonstrate with particularity a 'compelling necessity' for disclosure." The defendant was subsequently indicted and convicted on a count of false swearing.[6]

The majority finds it "significant, as did the district court," that the defendant did not verify his affidavits. I read the record of this case quite differently. The defendant's second petition was denied not because it was unverified, but because the district judge thought that the defendant had failed to show a particularized need.[7] Nor does the record establish that defendant's first petition was denied because it was not verified. The record shows that the court requested the defendant to file a "full and complete petition," and not one which was verified. The issue, then, is limited to determining whether the district court was correct when it held that the defendant failed to show a particularized need. I believe that it was not and that the facts of this case make out a need as compelling as any possible.

6. After indictment the defendant did see his testimony. But, by then, the statutory defense of recantation was gone.

7. Judge Robson's Memorandum and Order entered on December 23, 1974 stated:
  Accordingly, Clavey's petition for production of his grand jury transcripts must be denied for failing to demonstrate with particularity a "compelling necessity" for disclosure. Since this conclusion is dispositive of the matter, the court need not reach the remaining issues raised by the Government.
  The only time in which Judge Robson even mentioned that the second petition was not verified was in the beginning of the second

I believe that this case is controlled by *United States v. Rose*, 215 F.2d 617 (3d Cir. 1954). *See also United States v. Remington*, 191 F.2d 246 (1951), *cert. denied*, 343 U.S. 907, 72 S.Ct. 580, 96 L.Ed. 1325 (1952). In *Rose* the defendant was convicted of perjuring himself before the grand jury under 18 U.S.C. § 1621. Before trial, he moved to inspect the grand jury testimony, stating that he was suffering from diabetes and a heart ailment at the time he testified before the grand jury. As a result, he suffered lapses of memory which impaired his attorney's ability to prepare and conduct his defense effectively. The court, quoting *Remington, supra*, with approval, stated:

> We think inspection before trial should have been allowed. As already stated, the essential issue in perjury is whether the accused's oath truly spoke his belief; all else is contributory to that issue. . . . His memory of what he said is no adequate substitute for the minutes themselves. It is one thing to deny defense access to grand jury minutes which it intends to use for the relatively negative purpose of impeaching a witness; it is quite a different thing to deny an accused access to the minutes of his testimony which may afford him an affirmative defense. 215 F.2d at 629.

Noting that disclosure would subvert none of the policies justifying secrecy the court held nondisclosure to be reversible error.[8]

As in *Rose*, the defendant here was charged and convicted of perjuring himself before the grand jury. As in *Rose*, the defendant's lapse of memory impaired his

paragraph of his order when he stated, "In two unverified petitions . . . . ."

8. In its brief, the Government cites two cases, *United States v. DiSalvo*, 251 F.Supp. 740 (S.D.N.Y.1966), and *United States v. Kahaner*, 203 F.Supp. 78 (S.D.N.Y.1962), in support of its arguments. These cases are factually distinguishable in that they involved prosecutions for crimes other than perjury. More important, the defendants in those cases sought their transcripts in order to "refresh" their memories; they were not needed to raise an affirmative defense as in *Rose* and *Remington*, and they were not necessary to assist counsel to decide whether to recant as in this case.

ability to obtain and to use the assistance of counsel. And finally, as in *Rose*, the refusal to provide a transcript denied affording the defendant an affirmative defense to the charges of false swearing.

The need for disclosure here is strengthened by the recent enactment of the recantation statute, 18 U.S.C. § 1623(d). The specific congressional purpose in enacting this legislation was to induce witnesses to give truthful testimony by permitting them to correct false statements without incurring the risk of prosecution for doing so. *United States v. Anfield*, 539 F.2d 674, 679 (9th Cir. 1976); *United States v. Del Toro*, 513 F.2d 656, 665 (2d Cir. 1975); *United States v. Lardieri*, 506 F.2d 319, 322 (3d Cir. 1974). See 1970 U.S.Code Cong. & Admin.News at p. 4007. This congressional purpose is frustrated if witnesses are not able to obtain the assistance of counsel in determining whether to exercise this privilege.

The majority, seeking to minimize the import of its decision, states that the defendant could have reappeared before the grand jury and reviewed his prior testimony. Besides the practical difficulties involved when a witness frequently leaves the grand jury room to communicate with his attorney, this alternative provides no remedy. Without knowing what his client has said, defense counsel is in no position to give legal advice or even determine whether there was anything to recant.

The criminal justice system is not a game of hide and seek. Specifically, the Government should not hide grand jury testimony from the person who gives it. Mr. Justice Sutherland's admonition over forty years ago is appropriate: "[The] interest [of the United States] in a criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935). And justice mandates, particularly when none of the justifications for grand jury secrecy are viable, that disclosure here be allowed.

## II

In its brief in this court, the Government admits that there was "no testimony and no evidence that any campaign funds were diverted to Clavey's use." Yet it argues that the giving of the campaign contribution instruction was harmless error. The majority agrees with the Government and cites *United States v. Demopoulos*, 506 F.2d 1171 (7th Cir. 1974), *cert. denied*, 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 673 (1975), and *Long v. United States*, 124 U.S.App.D.C. 14, 360 F.2d 829 (1966), in support of its holding. These cases are distinguishable. In *Demopoulos*, no objection was made to a clause in a sentence inadvertently included in the instruction. In *Long*, the Court of Appeals for the District of Columbia commented: "The charge was inappropriate, and apparently inadvertent . . . . In the circumstances this was harmless error; we note that no objection was made on this score at the time." *Id.* at 835. In contrast, the giving of the instruction here was not inadvertent—the defendant timely objected on the specific ground that there was no evidence that he had diverted campaign funds to his own use. The trial judge, in overruling the objection, said: "From all the facts and circumstances in the case, in the evidence produced, it is a fair inference to draw. That is up to this jury, not to me." Significantly, Government counsel kept silent.

This case comes directly within the Supreme Court's holding in *United States v. Breitling*, 61 U.S. (20 How.) 252, 15 L.Ed. 900 (1857). There Mr. Chief Justice Taney wrote:

It is clearly error in a court to charge a jury upon a supposed or conjectural state of facts, of which no evidence has been offered. The instruction presupposes that there is some evidence before the jury which they may think sufficient to establish the facts hypothetically assumed in the opinion of the court; *and if there is no evidence which they have a right to consider, then the charge does not aid them in coming to correct conclusions, but its tendency is to embarrass and mis-*

*lead them. It may induce them to indulge in conjectures, instead of weighing the testimony.* 61 U.S. at 255, 15 L.Ed. 900 (emphasis added).

The Ninth Circuit in *Morris v. United States*, 326 F.2d 192 (9th Cir. 1963), after analyzing the evidence, concluded that there was no evidence or reasonable inference to support a challenged instruction and, citing *Breitling*, reversed the conviction. In the case before us there is no need to analyze the evidence. It is admitted that there was no testimony that any campaign funds were ever diverted to the defendant's personal use.. Nonetheless, the majority argues that *because* there was no evidence on that score, "the jury could not have convicted Clavey on the basis of the campaign fund instruction." With deference, I suggest this is a sophism. If there were evidence to support the instruction, it would not have been error to have given it. But there was no evidence; hence, there was no reason to give it. The argument of the majority would allow the instruction willy-nilly, whether or not there was any supporting evidence. Such a view flies in the face of the reasons stated in *Breitling* for reversing a judgment because of a jury instruction which has no evidentiary basis.

### III

After the jury returned its verdict and had been discharged, the trial judge made the following announcement from the bench:

The Court: There were two questions asked of the court last night. At a little after 5:00 o'clock the first question was asked—sent to me by a note from the foreman of the jury to my Deputy United States Marshal James Guidagno—and I have it here in the original handwriting, signed by Mr. Sawyer, the foreman, who was the gentleman that sat here—the question:

"Is it possible to have copies of the instructions to the jury?"

The answer of the court was "no." I have never let instructions go to the jury because I believe, and always did, and

many of the judges agree with me—some of them don't—I believe it confuses them more than it aids and assists them.

The next question:

"Is it possible to have the judge explain a couple of points about the indictment and counts?"

And the answer to that was "no," because I will not become a thirteenth juror in this case, and I should not invade the province of the jury, which I did not do. The answer to the question of the jury, carried to them by the deputy United States marshal, was to continue to deliberate.

This morning at about 9:25 another note was addressed to the court. It says:

"The counts in the indictment are related to one another, some more than others. For example, count 2 is related to count 5. In this respect, if we find the defendant guilty on count 2 and/or count 3, must we also find him guilty on count 1?"

And the court's answer to that question was to continue to deliberate, and then minutes later they came out with a verdict.

The majority acknowledges that the judge erred in not informing counsel of the jury's communications and in not responding to the questions. Unfortunately the majority holds these errors to be harmless. But they were not harmless.

The Supreme Court in *Rogers v. United States*, 422 U.S. 35, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975), reiterated the requirement laid down in *Shields v. United States*, 273 U.S. 583, 47 S.Ct. 478, 71 L.Ed. 787 (1927), that counsel be informed of inquiries from the jury such as were made here and be given an opportunity to be heard before the judge responds. In *Rogers*, Mr. Chief Justice Burger wrote:

As in *Shields*, the communication from the jury in this case was tantamount to a request for further instructions. However, we need not look solely to our prior decisions for guidance as to the appropriate procedure in such a situation. Federal Rule Crim.Proc. 43 guarantees to a

defendant in a criminal trial the right to be present "at every stage of the trial including the impaneling of the jury and the return of the verdict." Cases interpreting the Rule make it clear, if our decisions prior to the promulgation of the Rule left any doubt, that the jury's message should have been answered in open court and that petitioner's counsel should have been given an opportunity to be heard before the trial judge responded. 422 U.S. at 39, 95 S.Ct. at 2095.

It is true that the Chief Justice also commented that a violation of Fed.R.Crim.P. 43 may be harmless error in some situations, citing Fed.R.Crim.P. 52(a). However, Rule 52(a) provides that, "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." How can it be said that the substantial rights of the defendant here were not affected by the judge's not informing counsel of the jury's communications to him and by his not responding to their inquiries?

The majority strains to construct an apology for the judge's error, but at best its hindsight effort is speculation and at worst a sophism. For example, the majority speculates that the last two questions asked by the jury "appear" to be related, and that when read together the final question "appears" to be only a specific version of the one asked the night before. The majority then hypothesizes that because the defendant was acquitted on certain (but not all) counts to which the last question related, the judge's answer, if given, could not have "produced a more favorable result for him." The majority apparently rules out the possibility of a complete acquittal had the judge taken the steps the majority says he should have taken.

Finally, the majority acknowledges that Government witness March's financial condition was relevant rebuttal evidence, yet says that the trial judge did not abuse his discretion in refusing its admission. The majority also concedes that the judge should have given the defendant's motive instruction as proffered, but explains the error away by saying the jury could have

interpreted other instructions as supplying the essential missing language.

The doctrine of harmless error does indeed have a place in the review of criminal trials; however, it should not be used to excuse the glaring trial errors that permeate this case. The Supreme Court in *Chapman v. California*, 386 U.S. 18, 22, 24, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967), defined harmless error in constitutional terms:

> We conclude that there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not resulting in the automatic reversal of the conviction.

> \*       \*       \*       \*       \*       \*

> [W]e hold   .   .   .   that before a federal constitutional error can be held harmless, *the court must be able to declare a belief that it was harmless beyond a reasonable doubt.* (emphasis added)

I believe that errors not of constitutional dimension should also be judged by the same standard. When the errors here are so judged, it is clear that they were far from harmless.

Mr. Justice Clark, while sitting by designation in the Seventh Circuit, once had occasion to comment: " 'Harmless Error' is swarming around the 7th Circuit like bees." *United States v. Jackson*, 429 F.2d 1368, 1373 (7th Cir. 1970). Regretful as the situation was that prompted Mr. Justice Clark's remark, it is even more regretful that "harmless error" has been used in this case to deny the defendant the new trial to which he is entitled.